## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HELMERICH & PAYNE INTERNATIONAL DRILLING CO., <br><br>           Plaintiff, <br><br> vs. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, PETRÓLEOS DE VENEZUELA, S.A., and PDVSA PETRÓLEO, S.A., <br><br>           Defendants. | Case No. 1:11-cv-01735-CRC |

### JOINT STATUS REPORT

On August 20, 2021, this Court directed the parties (Helmerich & Payne International Drilling Co. ("H&P" or "Plaintiff"), and the Bolivarian Republic of Venezuela ("Venezuela"), Petróleos de Venezuela, S.A. ("PDVSA"), and PDVSA Petróleo, S.A. ("Petróleo") (collectively, "Defendants")) to file a Joint Status Report "reflect[ing] the status of the parties meet-and-confer efforts, and includ[ing] a proposed case management plan as to whether and how this matter may proceed." The parties have conferred but were unable to reach agreement on whether or how this matter may proceed. Plaintiffs thereby submit their proposal for continued proceedings, and Defendants submit their respective alternative counterproposals.

**Current Status**: H&P and its wholly-owned subsidiary H&P de Venezuela ("H&P-V") brought this action on September 23, 2011, against the Venezuelan government, Venezuela's state-owned oil company PDVSA, and PDVSA's subsidiary Petróleo, "to redress defendants' 2010 seizure of Plaintiffs' long-established Venezuelan oil drilling business, including eleven fully operational oil drilling rigs and all associated equipment, infrastructure, and personal and

real property."  Dkt. 1 ¶1.[1]  On August 23, 2012, Defendants filed motions to dismiss for, *inter alia*, lack of jurisdiction under the Foreign Sovereign Immunities Act ("FSIA") and the act of state doctrine.  Dkt. Nos. 22-24.

On August 7, 2018, after remand from the Supreme Court, the D.C. Circuit affirmed this Court's dismissal of H&P-V's claims and its denial of Defendant's motions to dismiss H&P's remaining claims.  *Helmerich & Payne International Drilling Co. v. Bolivarian Republic of Venezuela*, 743 F. App'x 442, 455 (D.C. Cir. 2018).  The Court of Appeals remanded the case to this Court "to address any remaining threshold jurisdictional issues, including whether the expropriation exception's commercial-activity requirement has been satisfied" and whether one of the Defendants—the Bolivarian Republic of Venezuela—should be dismissed under *Simon v. Republic of Hungary*, 812 F.3d 127 (D.C. Cir. 2016) and *De Csepel v. Republic of Hungary*, 859 F.3d 1094 (D.C. Cir. 2017).

This Court subsequently ordered the parties to submit proposals for proceeding after remand from the D.C. Circuit.  H&P identified four remaining threshold jurisdictional issues (Dkt. 129):

1.   Defendants' Rule 12(b)(1) factual defense contending that the property at issue is not owned or operated by the PDVSA Defendants within the meaning of the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1605(a)(3), because it allegedly is being operated by PDVSA Servicios Petróleros, S.A., which Defendants contend is neither an agency or instrumentality of the state nor engaged in commercial activities in the United States (*see* Dkt. 78);

---

[1] The Complaint also asserted contract claims, but those claims have already been dismissed for lack of jurisdiction under the FSIA.  *Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, 784 F.3d 804 (D.C. Cir. 2015).

2. Venezuela's Rule 12(b)(1) legal defense contending that the second prong of Section 1605(a)(3), which denies immunity when the expropriated "property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States," applies only to agencies or instrumentalities of Venezuela and not to Venezuela itself (*see* Dkt. 78);

3. Defendants' Rule 12(b)(6) legal defense contending that the Act of State doctrine precludes this Court's consideration of the expropriation claims;

4. Defendants' Rule 12(b)(6) legal defense contending that Plaintiffs failed adequately to plead that H&P-IDC suffered a loss of control over H&P-V and/or its assets as a result of the expropriation.

H&P and Venezuela agreed to stay proceedings against Venezuela pending potential settlement. Dkt. 130.

The PDVSA Defendants submitted a separate status report (Dkt. 128) stating that the D.C. Circuit's decision leaves two threshold questions that must be answered in order to determine whether H&P-IDC had any "rights in property" of its own that were taken in violation of international law as required to satisfy the FSIA's expropriation exception:

1. Whether Defendants have, in fact, "permanently take[n] control over management and control of [H&P-V's] business, completely destroying the beneficial and productive value of [H&P's] ownership of [its] company, and leaving [H&P] with shares that have been rendered useless." 743 F. App'x at 455.

2. Whether, as a matter of Venezuelan law, H&P-IDC had any direct rights in H&P-V's property and whether any such rights were taken in violation of international law. *Id.*

This Court entered a case management order on January 10, 2019.  Dkt. 131. As requested, this Court stayed litigation against Venezuela to allow the parties to pursue a negotiated settlement.  *Id.* at 4.  The Court also ordered the PDVSA Defendants to serve discovery limited to the question of whether Defendants in fact have completely taken over control of H&P-V and to respond to H&P's discovery requests, many of which had been the subject of a Motion to Compel granted by this Court on May 13, 2016, related to whether the expropriated property is owned or operated by the PDVSA Defendants or (as PDVSA Defendants claim) by PDVSA-SP and whether PDVSA-SP is itself an agency or instrumentality of Venezuela engaged in commercial activities in the United States (Issue 1).

While the PDVSA Defendants' served discovery requests on H&P, the Parties were unable to provide any discovery responses due to sweeping changes to the political situation that occurred shortly after the entry of this Court's entered its scheduling order.  Specifically, the Venezuelan National Assembly declared former Venezuelan president Nicolas Maduro illegitimate and named Juan Guaidó as Interim President of Venezuela pursuant to Article 233 of the Venezuelan Constitution.  On January 23, 2019, President Donald Trump issued a statement officially recognizing Mr. Guaidó as Interim President of Venezuela and rejecting the legitimacy of the Maduro regime.[2]  The Executive's recognition of the Interim Government is binding on U.S. courts and constitutes a derecognition of the illegitimate Maduro regime.  *See Rusoro Mining Ltd. v. Bolivarian Republic of Venez.*, No. 18-7044, 2019 U.S. App. LEXIS 17543, at *1-

---

[2] The White House, Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaidó as the Interim President of Venezuela (Jan. 23, 2019), available at https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-interim-president-venezuela/.

2 (D.C. Cir. May 1, 2019); *Nat'l Petrochemical Co. v. M/T Stolt Sheaf*, 860 F.2d 551, 553 (2d Cir. 1988).

H&P moved to stay all proceedings on February 14, 2019, in part because Defendants no longer had access to the documents and information necessary to comply with their discovery obligations.  Dkt. No. 132.  The Court granted H&P's motion the following day.  Dkt. No. 133.  Thereafter, the Parties submitted periodic joint status reports.  On August 19, 2021, H&P informed the Court that it intended to move to lift the stay.  Dkt. No. 143.  On August 20, 2021, the Court ordered the Parties to meet and confer and to file a joint status report.

**H&P's Proposal**:

The stay has remained in place for the past two-and-a-half years, and there is little if any sign that the political situation in Venezuela will be resolved in a manner that would allow Defendants to comply with their discovery obligations.  At this point, given the length of time that has passed and the likelihood that any resolution to the political and diplomatic situation remains far off, H&P believes that this matter should proceed according to a revised case management plan, as described immediately below.

Jurisdictional Discovery:  H&P proposes that the PDVSA Defendants shall respond to H&P's outstanding document requests, interrogatories and requests for admission within 60 days after the stay is lifted.  Within 30 days after the PDVSA Defendants provide their responses to H&P's document requests, interrogatories and requests for admission, the PDVSA Defendants will produce a witness to testify at a deposition pursuant to any H&P notice for a Rule 30(b)(6) deposition.  To the extent the PDVSA defendants are unable to produce any requested discovery, they shall so state in a sworn declaration attesting to their inability and the reasons for it; and

they shall make a witness available to testify at deposition on the subject of the lack of availability of such information.

Plaintiff further proposes that it should have sixty (60) days to respond to any outstanding jurisdictional discovery requests for documents, requests for admissions, or interrogatories relating to issues (5) and (6), above, concerning control over, and direct rights in, H&P-V; and that it shall have thirty (30) days thereafter to produce a 30(b)(6) witness for deposition, if requested by the PDVSA Defendants.

Schedule Following Discovery:  Plaintiff proposes that the following schedule should apply to the proceedings following the close of jurisdictional discovery:

- The Defendants shall within 45 days from the close of discovery file a Rule 12(b) motion concerning their remaining Rule 12(b) legal defenses, including but not limited to the assertion that plaintiffs have not satisfied the jurisdictional requirements of the expropriation or commercial activities exception to immunity under the FSIA, failed adequately to plead that H&P suffered a loss of control over H&P-V and/or its assets as a result of the expropriation (enumerated issue 4, above), and that the Act of State doctrine applies (enumerated issue 3, above), within 45 days from the close of jurisdictional discovery.

- H&P will file a consolidated opposition brief and motion for summary judgment, addressing the Defendants' Rule 12(b) motions and the ultimate issue of whether H&P is entitled to relief, within 60 days of service of Defendants' 12(b) motions.

- Defendants will file a consolidated reply and opposition within 60 days of service of H&P's consolidated opposition and motion for summary judgment.

- H&P will file a consolidated reply within 30 days of service of Defendants' consolidated reply and opposition.

- The Court may schedule a hearing as necessary.

The Court's prior Order stated that it "will adjudicate Defendants' Rule 12(b)(6) defense contending that the Act of State doctrine applies and prevents this Court's consideration of Plaintiff's expropriation claims after all remaining issues relating to subject matter jurisdiction are resolved," (Dkt. 77). Given the time that has passed, however, H&P believes that all remaining threshold issues can be resolved in a single proceeding as described above. If Plaintiff's motion for summary judgment were granted, Plaintiff would propose additional briefing and possibly evidentiary proceedings as to damages and any remaining issues in the case.

H&P notes that the Defendants have advanced various legal arguments and included legal briefing in support of their case management proposal. H&P's position is that the Court asked for a status report and case management plan and that Defendants' legal arguments and briefing are not properly raised here. To the extent Defendants wish to have the Court consider substantive legal argument in support of any case management plan, H&P respectfully submits that a briefing schedule should be part of the case management plan to resolve such issues. Although H&P has not endeavored to brief the legal issues raised in Defendants' submission, below, its proposal is consistent with the Supreme Court's decision in *Bolivarian Republic of Venezuela* v. *Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312 (2017). There, the Supreme Court made clear that this Court must resolve any jurisdictional questions before ruling on the merits, *id.* at 1323, and that is what H&P's proposal contemplates. Indeed, H&P proposes briefing the jurisdictional issues alongside the merits issues, so that the Court can decide the

jurisdictional issues and then move immediately to decide the merits issues.  H&P proposes that the briefing of jurisdictional and merits issues should be consolidated because they overlap to an overwhelming degree and it would be inefficient, expensive, and wasteful of judicial resources to conduct this litigation in piecemeal fashion.  Moreover, H&P's proposal is both practical and fair given that this litigation has already dragged on for more than 11 years, is still at the jurisdictional phase, and could end in a pyrrhic victory if the PDVSA Defendants are allowed to run out the clock with serial "threshold" challenges and appeals.

**PDVSA Defendants' Position:**

Jurisdiction:  The Supreme Court's decision in this case makes clear that, if the stay is lifted, this Court must first resolve the threshold question of whether it has subject matter jurisdiction under the FSIA's expropriation exception, 28 U.S.C. § 1605(a)(3), which is the only exception that could conceivably apply in this case.  *See Bolivarian Republic of Venezuela* v. *Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1317 (2017).  To determine whether the Court may properly exercise jurisdiction over the PDVSA Defendants with respect to H&P's claim under the expropriation exception, the Court must decide the following issues:

1.  Whether H&P had any "rights in property" of its own that were taken in violation of international law as required under Section 1605(a)(3).  In view of the D.C. Circuit's 2018 decision, the answer to this question requires the resolution of two subsidiary issues:

    a.  Whether Defendants have, in fact, "permanently take[n] control over management and control of [H&P-V's] business, completely destroying the beneficial and productive value of [H&P's] ownership of [its] company, and

leaving [H&P] with shares that have been rendered useless." *Helmerich &*

*Payne*, 743 F. App'x at 455.

    b.  Whether, as a matter of Venezuelan law, H&P had any direct rights in H&P-

V's property and whether any such rights were taken in violation of

international law. *Id.*

2.    Whether the property taken or property exchanged for such property "is owned or

operated by an agency or instrumentality of [Venezuela] and that agency or

instrumentality is engaged in a commercial activity in the United States" under

Section 1605(a)(3).

    <u>Jurisdictional Discovery</u>:  The Parties have sought jurisdictional discovery only with

respect to Issue Nos. 1(a) and 2 above.  Specifically, the PDVSA Defendants have served

discovery requests seeking information relating to Issue No. 1(a) and Plaintiffs have served

discovery requests seeking information relating to Issue No. 2.

    Before this case was stayed in February 2019, the PDVSA Defendants served documents

requests, interrogatories, requests for admission and deposition notices on H&P and H&P-V.

The PDVSA Defendants do not oppose H&P's request for 60 days to respond to the PDVSA

Defendants' document requests, interrogatories and requests for admission.  The PDVSA

Defendants' position is that H&P must  produce a witness to testify in response to the deposition

notices that the PDVSA Defendants served on H&P and H&P-V pursuant to Rule 30(b)(6)

within 30 days after H&P completes its document production.

    The PDVSA Defendants oppose H&P's proposals with respect to Plaintiffs' jurisdictional

discovery requests, which seek information relating to Issue No. 2 above.  Most, if not all, of

those requests seek information that is located in Venezuela, and the PDVSA Defendants do not

have access to any such information.  If this Court lifts the stay, the PDVSA Defendants will

confirm within 30 days after the stay is lifted that they have no information responsive to

Plaintiffs' discovery requests in their possession, custody or control.  If H&P is unsatisfied with

that response and believes that the PDVSA Defendants are withholding information in their

possession, custody or control, H&P can file a motion to compel.  However, such a motion

would be frivolous.  Indeed, given the fact that the Plaintiffs' discovery requests target

information in Venezuela and that the PDVSA Defendants do not have the ability to obtain such

information, the PDVSA Defendants cannot be compelled to produce such information or

sanctioned for failing to produce such information through an adverse inference or otherwise.

*See Comparelli v. Bolivarian Republic of Venez.,* No. 14-24414, 2021 U.S. Dist. LEXIS 149699,

at *7 (S.D. Fla. Aug. 10, 2021) (denying a motion for discovery sanctions against Venezuela

where the information sought was inaccessible due to the political situation in Venezuela).

The PDVSA Defendants oppose H&P's request for a second Rule 30(b)(6) deposition.

The PDVSA Defendants have already provided a Rule 30(b)(6) witness who was deposed for

two days before this case was stayed.  There is simply no need for the PDVSA Defendants to

bear the burden and expense of a second deposition when the PDVSA Defendants do not have

access to any witnesses with knowledge of the information sought by H&P's discovery requests.

In any event, the jurisdictional discovery sought by H&P is no longer relevant in view of

subsequent developments in this case and the political situation in Venezuela.  Nearly all of the

Plaintiffs' discovery requests related to H&P-V's then pending claim that Defendants

expropriated its oil drilling rigs and related property in Venezuela and sought information to

support H&P-V's arguments that, for purposes of Issue No. 2, PDVSA either controlled the rigs

itself or controlled its subsidiary PDVSA Servicios Petróleros, S.A. ("PDVSA-SP"), which

operated the rigs.[3]   However, after this Court's order compelling such discovery, the D.C. Circuit

dismissed H&P-V's expropriation claim and held that H&P could not assert an expropriation

claim based on an alleged taking of H&P-V's property.  In view of that binding decision, the

discovery sought from the PDVSA Defendants is no longer relevant to this case.

Plaintiffs' discovery requests are also irrelevant in view of the U.S. Executive Branch's

recognition of the Interim Government and derecognition of the Maduro regime.  As H&P

explained in its motion to stay the proceedings, the Executive Branch's recognition of the

Interim Government and derecognition of the Maduro regime is binding on this Court.  *See* Dkt.

No. 132 (citing *Guaranty Tr. Co. v. United States*, 304 U.S. 126, 137-38 (1938)); *see also*

*Rusoro Mining Ltd. v. Bolivarian Republic of Venez.*, No. 18-7044, 2019 U.S. App. LEXIS

17543, at *1-2 (D.C. Cir. May 1, 2019).  As a result of the U.S. Government's recognition, the

Interim Government's acts, including the appointment of PDVSA's *ad hoc* Board, are subject to

the act of state doctrine, and therefore the validity of those acts cannot be questioned by this

Court.  *See Jiménez v. Palacios*, No. 2019-0490-KSJM, 2019 Del. Ch. LEXIS 288, at *22 (Del.

Ch. Aug. 2, 2019), *aff'd* 237 A.3d 68 (Del. 2020); *see also United States v. Pink*, 315 U.S. 203,

232-33 (1942); *Underhill v. Hernandez*, 168 U.S. 250, 253-54 (1897).  Thus, as a matter of U.S.

law, PDVSA is represented by the *ad hoc* Board, and this Court cannot recognize any other

entity or individual purporting to act as PDVSA.  *See Jiménez*, 2019 Del. Ch. LEXIS 288, at *22.

PDVSA's *ad hoc* Board does not have title, possession, custody, or control of any expropriated

---

[3] While Plaintiffs' discovery requests also sought information regarding PDVSA-SP's alleged commercial activities
in the United States, such discovery is irrelevant because PDVSA-SP is not controlled by PDVSA and does not
qualify as an agency or instrumentality of Venezuela.  *See Dole Food Co. v. Patrickson,* 538 U.S. 468, 477 (2003).
It is also notable that PDVSA-SP is subject to the U.S. Treasury Department's Venezuelan sanctions program and
therefore cannot engage in any commercial transactions in the United States.  *See* U.S. Dept. of Treasury,
Determination Pursuant to Section 1(a)(i) of Executive Order 13850 (Jan. 28, 2019), *available at*
https://home.treasury.gov/ssystem/files/126/vz_sector_determination_oil_20190128.pdf; *see also* Exec. Order No.
13850, 83 Fed. Reg. 55243 (Nov. 1, 2018).

property or any property that may have been exchanged for it, and it does not have any control over PDVSA-SP or any entity that may operate or control such property.  Furthermore, any entity that may operate or control such property cannot qualify as an agency or instrumentality of the Venezuelan state, and the actions of any such entity cannot be attributed to the PDVSA Defendants.  Thus, the information sought by Plaintiffs' discovery requests regarding activities and entities in Venezuela is not relevant to adjudicating the PDVSA Defendants' jurisdictional defenses.

However, if this Court disagrees and concludes that the information sought by Plaintiffs' discovery requests are relevant to the jurisdictional inquiry under the FSIA's expropriation exception, the Court may be forced to grapple with the due process implications of exercising jurisdiction over the PDVSA Defendants based on alleged activities having no connection to the United States.  *See Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).

In any event, the Court should defer ruling on such matters because all of the information sought by Plaintiffs' discovery requests is located in Venezuela and therefore cannot be obtained by any of the Parties.  Moving forward on an incomplete record would be fundamentally unfair and wholly inappropriate.  The PDVSA Defendants cannot be forced to litigate factual disputes when they do not have the ability to access information needed to disprove, rebut or even verify H&P's assertions of fact.  H&P cannot fill in the gaps in the factual record through adverse inferences based on the PDVSA Defendants' inability to produce information that is not in their possession, custody or control.  *See Comparelli,* No. 14-24414, 2021 U.S. Dist. LEXIS 149699, at *7.  Rather, if this Court determines that Plaintiffs' discovery requests remain relevant to Issue No. 2, it should defer ruling on that Issue and, instead, rule on the other dispositive jurisdictional issues listed above.

<u>Proposed Schedule on the Remaining Jurisdictional Issues</u>:  The PDVSA Defendants propose the following schedule for litigating the remaining jurisdictional issues:

- The PDVSA Defendants will confirm within 30 days after the stay is lifted that they have no information responsive to Plaintiffs' discovery requests in their possession, custody or control.

- H&P will respond to the PDVSA Defendants' document requests, interrogatories and requests for admission within 60 days after the stay is lifted.

- Within 30 days after H&P provides its responses to the PDVSA Defendants' document requests, interrogatories and requests for admission, H&P will produce a witness to testify at a deposition in response to the PDVSA Defendants' Rule 30(b)(6) deposition notices.

- The PDVSA Defendants will file renewed motions to dismiss for lack of subject matter jurisdiction under the FSIA within 60 days after the close of jurisdictional discovery;

- H&P will file its opposition to the PDVSA Defendants' motions to dismiss within 60 days after the filing of the PDVSA Defendants' motions to dismiss;

- The PDVSA Defendants will file their reply in support of their motions to dismiss within 30 days after the filing of H&P's opposition.

- The PDVSA Defendants respectfully request oral argument on their motions to dismiss to be scheduled at the Court's convenience.

<u>Non-Jurisdictional Matters</u>:  The PDVSA Defendants previously moved to dismiss this case under Rule 12(b)(6) on the grounds that H&P's claim is barred by the act of state doctrine. This Court previously deferred ruling on the act of state defense.  While the PDVSA Defendants'

act of state defense is not jurisdictional, the PDVSA Defendants agree with H&P that the act of state defense can and should be raised in the PDVSA Defendants' forthcoming motions to dismiss.

However, the PDVSA Defendants object to H&P's proposal to file a cross-motion for summary judgment on the merits to be decided alongside the PDVSA Defendants' motion to dismiss for lack of subject matter jurisdiction under the FSIA.  We understand H&P's position to be that the jurisdictional inquiry under the expropriation exception overlaps with the merits of its expropriation claim and therefore the Court should entered judgment on the merits if it denies the PDVSA Defendants' motion to dismiss for lack of jurisdiction under the FSIA.  However, that argument is foreclosed by the Supreme Court's decision in this case.  Indeed, the Supreme Court held that, if the jurisdictional inquiry under the FSIA overlaps with the merits of the case, a court must resolve the issue as a threshold jurisdictional matter and cannot enter summary judgment on such an issue under Rule 54.  *Helmerich & Payne*, 137 S. Ct. at 1319, 1323.  The Supreme Court explained that entering summary judgment on such an issue would improperly deprive the foreign state of its right to appeal the denial of its immunity under the collateral order doctrine. *Id.* at 1323.  Accordingly, this Court should rule on the PDVSA Defendants' jurisdictional defenses as a threshold matter consistent with the Supreme Court's instructions in this case.

**Bolivarian Republic of Venezuela's Position**:

As Plaintiff H&P-IDC ("H&P") notes, the Bolivarian Republic of Venezuela's ("Venezuela's") initial motion to dismiss asserted that the expropriation exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(3), does not confer jurisdiction over Venezuela because neither the expropriated property nor any property for which it has been exchanged is "present in the United States in connection with a commercial activity carried on in

the United States by [Venezuela]."  *See* Memorandum of Points and Authorities in Support of the Bolivarian Republic of Venezuela's Motion to Dismiss Plaintiffs' Complaint Pursuant to Foreign Sovereign Immunity ("Mot. to Dis.") (Dkt. 24-1) at 15-16.  The Court has not yet ruled on that issue because the parties agreed to defer resolution until the Court addressed potentially dispositive jurisdictional issues applicable to all Defendants.

This issue is dispositive as to Venezuela and is now ripe for resolution.  *See Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela,* 743 F. App'x 442, 456 (D.C. 2018) (*Helmerich IV*) (remanding for resolution of the issue).  H&P's Complaint ***does not allege*** that: (1) the expropriated property is in the United States; (2) the expropriated property has been exchanged for any property that is in the United States; or (3) Venezuela is engaged in any commercial activity in the United States in connection with the expropriated property or any property for which it have been exchanged.  Accordingly, the only issue before the Court on this matter is purely legal: whether, under these circumstances, the FSIA's expropriation exception permits an exercise of subject matter jurisdiction over Venezuela.  It does not.

The expropriation exception confers jurisdiction over a sovereign entity when a claim involves rights in property taken in violation of international law and there is some commercial nexus between the expropriated property and the United States.  The unresolved issue concerning Venezuela involves the nexus prong.  The requisite nexus exists in two circumstances: (1) when "the [expropriated] property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state;" and (2) that "[expropriated] property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States."  Venezuela is indisputably a "foreign

state" under the FSIA.  *See* Complaint (Dkt. 1) ¶¶ 11, 173 (alleging that Venezuela "is a foreign state").  Therefore, Venezuela's position since the outset of this case has been that a foreign state is subject to jurisdiction under the expropriation exception only when it meet it falls within the first clause of the nexus prong but not the second.  *See* Mot. to Dis. (Dkt. 24-1) at 15-16.

Since Venezuela filed its motion to dismiss, the D.C. Circuit has addressed that issue at least four times and, in all cases, adopted the position it advanced.  In *Simon v. Republic of Hungary*, 812 F.3d 127 (D.C. Cir. 2016), the D.C. Circuit held that the "nexus requirement differs somewhat for claims against the foreign state itself . . . as compared with claims against an agency or instrumentality of the foreign state," *id*. at 146, and required the *Simon* plaintiffs to meet the first clause to establish jurisdiction over a foreign state.  The court reiterated that holding in *De Csepel v. Republic of Hungary*, 859 F.3d 1094, 1107-08 (D.C. Cir. 2017),[4] and again in *Schubarth v. Federal Republic of Germany*, 891 F.3d 392, 394-95 (D.C. Cir. 2018) ("a foreign state is immune to claims for the expropriation of property not present in the United States"); *see also Philipp v. Federal Republic of Germany*, 894 F.3d 406, 414 (D.C. Cir. 2018) ("In *Simon*, we held that, with respect to foreign states (but not their instrumentalities), the expropriation exception's second requirement—'an adequate commercial nexus between the United States and the defendant[ ],'—is satisfied only when the property is present in the United States."), *vacated on other grounds*, 141 S. Ct. 703 (2021).[5]  Because H&P's Complaint does not allege any facts that

---

[4] *De Csepel* also rejected an argument that H&P previously made in this Court that *Simon* conflicted with the D.C. Circuit's holding in *Agudas Chasidei Chabad of U.S. v. Russian Federation*, 528 F.3d 934 (D.C. Cir. 2008), and therefore was not controlling circuit precedent.  This Court noted tension between *Chabad* and *Simon* in a decision on a motion to compel in this case, *see Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, 185 F. Supp. 3d 233, 239-42 (D.D.C. 2016), and stated at the time that it was not prepared to the issue without further briefing.  *Id*. at 242.  *De Csepel* has now definitively resolved the question whether *Simon* or *Chabad* is controlling, 859 F.3d at 1105-07, and *Schubarth* and *Philipp* have conclusively settled the issue that for a foreign state to be subject to jurisdiction under the expropriation exception, the Plaintiff must satisfy the first clause of the commercial nexus prong.

[5] The Supreme Court vacated the judgment in *Philipp* because it held that the expropriation exception's phrase "rights in property taken in violation of international law" references "the international law of expropriation rather than of

would, if accepted as true, permit an inference that the expropriated property (or any property exchanged for it) is in the United States in connection with any commercial activity of Venezuela, Venezuela is entitled to dismissal.

In light of this clear and controlling authority requiring dismissal for lack of subject matter jurisdiction of the one claim against it, Venezuela also does not believe that any discovery against it is appropriate and respectfully submits that H&P's request that it be ordered to show cause why it cannot respond to discovery has no legal basis.  As a foreign state, Venezuela "is presumptively immune from the jurisdiction of the United States courts."  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).  That immunity is not merely from liability but from the burdens of litigation, including discovery.  *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F2d. 438, 443 (D.C. Cir. 1990).  Jurisdictional discovery is permitted "only to verify allegations of *specific facts crucial to an immunity determination*," *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 849 (5th Cir. 2000) (internal quotes omitted), and may not be ordered at all when a sovereign raises a jurisdictional issue that can be resolved without such discovery.  *See Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).  Here, there is no doubt that Venezuela is a foreign state and thus presumptively immune from the jurisdiction of this Court.  Complaint ¶¶ 11, 173; *see Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, 743 F. App'x 442, 449 (D.C. Cir. 2018).  Accordingly, H&P bears the burden of alleging facts that would overcome that presumption in the first instance.  *Id.*  Since H&P has not alleged *any* facts suggesting that the expropriated property (or any property exchanged for it) is in the United States,

---

human rights" and therefore does not reach acts of genocide by a nation against its own citizens, 141 S. Ct. at 712 (internal citations omitted), which was the basis on which the D.C. Circuit concluded that the *Philipp* plaintiffs could proceed against Germany there notwithstanding that they were German nationals.  The Supreme Court's *Philipp* opinion does not address the issue Venezuela has raised and which *Simon*, *De Csepel*, *Schubarth*, and *Philipp* have resolved.

it has failed to satisfy the commercial nexus prong of the expropriation exception as to Venezuela. Accordingly, no basis exists for subject matter jurisdiction over Venezuela and thus no warrant for any discovery against it.

Rather than take the follow H&P's approach, Venezuela believes that intervening decisions of the D.C. Circuit remove any need for further briefing on the unresolved jurisdictional issue and that judgment can enter for it forthwith.  Venezuela will, of course, submit any further briefing that the Court orders or address any other issue that the Court wishes it to address.  Venezuela's position, however, is that the law is clear on the remaining jurisdictional issue it has raised and requires dismissal.  That matter can and should be addressed without burdening Venezuela with any jurisdictional discovery or order to show cause on that subject.

Dated: October 18, 2021                                   Respectfully submitted,

**WILMER CUTLER PICKERING
HALE AND DORR LLP**

By:  /s/    David W. Ogden
David W. Ogden (D.C. Bar No. 375951)
David W. Bowker (D.C. Bar No. 989309)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
E-mail: david.ogden@wilmerhale.com

*Attorneys for Plaintiffs*

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

/s/ Joseph D. Pizzurro [DRAFT]
Joseph D. Pizzurro (D.C. Bar No. 468922)
Kevin A. Meehan (D.C. Bar No. 1613059)

1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.: (202) 452-7373
Fax: (202) 452-7333
Email: jpizzurro@curtis.com


*Attorneys for Defendants Petróleos de
Venezuela, S.A. and PDVSA Petróleo, S.A.*

**HOGAN LOVELLS US LLP**

/s/ William L. Monts III        [DRAFT]
William L. Monts III (D.C. Bar No. 428856)
555 Thirteenth Street, NW
Washington, DC 20004-1009
Tel.: (202) 637-5600
Fax: (202) 637-5910
Email: william.monts@hoganlovells.com

Bruce D. Oakley (D.C. Bar No. TX0102)
609 Main Street, Suite 4200
Houston, TX 77002
Tel. (713) 632-1400
Fax: (713) 632-1401
Email: bruce.oakley@hoganlovells.com

*Attorneys for Defendant
Bolivarian Republic of Venezuela*