**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HELMERICH & PAYNE INTERNATIONAL DRILLING CO., <br><br> Plaintiff, <br><br> vs. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, PETRÓLEOS DE VENEZUELA, S.A., and PDVSA PETRÓLEO, S.A., <br><br> Defendants. | Case No. 1:11-cv-01735-CRC |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT BOLIVARIAN REPUBLIC OF VENEZUELA'S
RENEWED MOTION TO DISMISS UNDER RULE 12(b)(1) FOR
LACK OF SUBJECT MATTER JURISDICTION**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ................................................................................................. 1

PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS ................................ 2

ARGUMENT ....................................................................................................... 4

I.    AS A FOREIGN STATE, VENEZUELA IS NOT SUBJECT TO
      JURISDICTION UNDER THE EXPROPRIATION EXCEPTION
      BECAUSE THE ALLEGEDLY TAKEN PROPERTY IS NOT IN THE
      UNITED STATES IN CONNECTION WITH A COMMERCIAL
      ACTIVITY THAT VENEZUELA CARRIES ON IN THE UNITED
      STATES ................................................................................................... 5

II.   PIERCING THE VEIL BETWEEN VENEZUELA AND THE PDVSA
      DEFENDANTS DOES NOT CONFER JURISDICTION UNDER THE
      EXPROPRIATION EXCEPTION BECAUSE IT DOES NOT ALTER
      VENEZUELA'S STATUS AS A FOREIGN STATE UNDER THE
      FOREIGN SOVEREIGN IMMUNITIES ACT .......................................... 10

      A.    Foreign States Are Categorically Immune from Jurisdiction Under
            the Expropriation Exception Unless the Expropriated Property Is in
            the United States ........................................................................... 12

            1.    Veil Piercing Does Not Alter the Status of an Entity as a
                  Foreign State Under the FSIA ............................................. 12

            2.    Application of the Commercial-Activity Nexus of the
                  Expropriation Exception Is Determined by the Status of the
                  Entity in Question, Not the Status of an Entity that It
                  Purportedly Controls .......................................................... 14

            3.    Because Veil Piercing Cannot Alter Venezuela's Status a
                  Foreign State Under the FSIA, No Veil-Piercing Theory
                  Can Salvage H&P's Claim Against Venezuela Under the
                  Expropriation Exception ...................................................... 17

      B.    H&P's Complaint Does Not Allege an Agency Relationship
            Between Venezuela and the PDVSA Defendants or any Fraud or
            Injustice that Permits Piercing the Veil Between Venezuela and the
            PDVSA Defendants ......................................................................... 20

CONCLUSION .................................................................................................. 22

# TABLE OF AUTHORITIES

**Page**

*CASES*

*Agudas Chasidei Chabad of U.S. v. Russian Federation*,
  528 F.3d 934 (D.C. Cir. 2008) ................................................................................ 8

*Ambar v. Federal Republic of Germany*,
  No. 20-3587 (CKK), 2022 WL 782388 (D.D.C. Mar. 15, 2022) ............................ 14

*Argentine Republic v. Amerada Hess Shipping Co.*,
  488 U.S. 428 (1989) ................................................................................................ 4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 21

*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*,
  734 F.3d 1175 (D.C. Cir. 2013) ............................................................................. 4

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*
  137 S. Ct. 1312 (2017) (*Helmerich III*) ................................................................ 4

*Crist v. Republic of Turkey*,
  No. 95-7149, 1997 WL 71739 (D.C. Cir. 1997) .................................................... 15

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  244 F. Supp. 3d 100 (D.D.C. 2017) (*Crystallex I*) ............................................... 12

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  932 F.3d 126 (3d Cir. 2019) (*Crystallex II*) .............................................. 11, 13, 18

*de Csepel v. Republic of Hungary*,
  27 F.4th 736 (D.C. Cir. 2022) (*de Csepel II*) .................................................. 6, 17

*de Csepel v. Republic of Hungary*,
  859 F.3d 1094 (D.C. Cir. 2017) (*de Csepel I*) ............................................. 6, 8, 15

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003) ................................................................................................ 20

*DRC, Inc. v. Republic of Honduras*,
  71 F. Supp. 3d 201 (D.D.C. 2014) ......................................................................... 21

*El Paso Nat. Gas Co. v. United States*,
  750 F.3d 863 (D.C. Cir. 2014) ............................................................................... 17

*Federal Republic of Germany v. Philipp*,
   141 S. Ct. 703 (2021) (*Philipp II*)...................................................................... 7, 16

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
   462 U.S. 611 (1983)............................................................................................. *passim*

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
   905 F.2d 438 (D.C. Cir. 1990)............................................................................ 20

*Garb v. Republic of Poland*,
   440 F.3d 579 (2d Cir. 2006) ............................................................................... 15

*Gates v. Victor Fine Foods*,
   54 F.3d 1457 (9th Cir. 1995) .............................................................................. 15

*GSS Grp. Ltd v. Nat'l Port Auth.*,
   680 F.3d 805 (D.C. Cir. 2012) ........................................................................... 11

*Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*,
   185 F. Supp. 3d 233 (D.D.C. 2016) (*Helmerich II*) ...................................... 8

*Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*,
   743 F. App'x 442 (D.C. Cir. 2018) (*Helmerich IV*) ..................................... 6

*Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*,
   784 F.3d 804 (D.C. Cir. 2015) (*Helmerich I*), *cert. denied*, 137 S. Ct. 2114 (2017) ............... 5

*Ivanenko v. Yanukovich*,
   995 F.3d 232 (D.C. Cir. 2021) ........................................................................... 5, 16

*Luxepress 2016 Corp. v. Gov't of Ukraine*,
   No. 18-cv-812 (TSC), 2020 WL 1308357 (D.D.C. Mar. 19, 2020) .................. 9, 14

*Ministry of Def. & Support for Armed Forces of Islamic Republic of Iran v. Elahi*,
   546 U.S. 450 (2006)............................................................................................ 16

*Nemariam v. Federal Democratic Republic of Ethiopia*,
   491 F.3d 470 (D.C. Cir. 2007)........................................................................... 6

*Philipp v. Federal Republic of Germany*,
   894, F.3d 406 (D.C. Cir. 2018) (*Philipp I*), *vacated on other grounds*, 141 S. Ct. 703 (2021) . 9

*Phoenix Consulting, Inc. v. Republic of Angola*,
   216 F.3d 36 (D.C. Cir. 2000)............................................................................. 4

*Process & Indus. Devs. Ltd. v. Federal Republic of Nigeria*,
   962 F.3d 576 (D.C. Cir. 2020)........................................................................... 19

*Roeder v. Islamic Republic of Iran,*
   333 F.3d 228 (D.C. Cir. 2003) ................................................................ 6

*Rong v. Liaoning Provincial Gov't,*
   452. F.3d 883 (D.C. Cir. 2006) ........................................................ 5, 16

*Schubarth v. Federal Republic of Germany,*
   891 F.3d 392 (D.C. Cir. 2018) (*Schubarth I*) .................................. 5, 6, 9

*Schubarth v. Federal Republic of Germany,*
   No. 14-cv-2140 (CRC),
   2021 WL 7889662 (D.D.C., Jan. 25, 2021) (*Schubarth II*) ............................... *passim*

*Simon v. Republic of Hungary,*
   443 F. Supp. 3d 88 (D.D.C. 2020) (*Simon II*) .................................... 9, 14

*Simon v. Republic of Hungary,*
   812 F.3d 127 (D.C. Cir. 2016) (*Simon I*) .......................................... 7, 8

*Taylor v. Kingdom of Sweden,*
   No. 18-1133 (RJL), 2019 WL 3536599 (D.D.C., Aug. 2, 2019) ............................ 15

*TIG Ins. Co. v. Republic of Argentina,*
   No. 18-mc-00129, 2022 WL 1154749 (D.D.C. Apr. 18, 2022) ........................ 20, 21

*Transaero, Inc. v. La Fuerza Aerea Boliviana,*
   30 F.3d 148 (D.C. Cir. 1994) ................................................... 7, 16, 17

*Transamerica Leasing, Inc. v. La Republica de Venezuela,*
   200 F.3d 843, 848-49 (D.C. Cir. 2000) .......................................... 21

*United States v. Adewani,*
   467 F.3d 1340 (D.C. Cir. 2006) .................................................. 8

*Verlinden B.V. v. Cent. Bank of Nigeria,*
   461 U.S. 480 (1983) .............................................................. 16

*Walker Int'l Holdings Ltd. v. Republic of Congo,*
   395 F.3d 229 (5th Cir. 2004) .................................................... 18

**STATUTES**

28 U.S.C. § 1603(a) ................................................................ 15

28 U.S.C. § 1603(a)-(b) ............................................................ 6

28 U.S.C. § 1603(b) ............................................................... 15

28 U.S.C. § 1604 ................................................................... 4

28 U.S.C. § 1605(a)(2) ................................................................................................ 5

28 U.S.C. § 1605(a)(3) ........................................................................................ *passim*

28 U.S.C. § 1605(a)(6) ........................................................................................ 12, 13

28 U.S.C. § 1606 ................................................................................................ 15, 19

28 U.S.C. § 1608(a)-(b) ...................................................................................... 15, 19

28 U.S.C. § 1610(a)-(b) ...................................................................................... 15, 19

OTHER AUTHORITIES

D.C. Cir. R. 32.1(b)(1)(A) ...................................................................................... 15

RESTATEMENT (SECOND) OF AGENCY § 1 ................................................................ 21

## INTRODUCTION

Defendant Bolivarian Republic of Venezuela ("Venezuela") submits this memorandum in support of its renewed motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

This is an expropriation case.  The issue on this motion is simple and straightforward. Plaintiff Helmerich & Payne International Drilling Company ("H&P") alleges that Venezuela and Defendants Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A. (collectively, the "PDVSA Defendants") expropriated certain oil drilling rigs and related property in violation of international law.  H&P sued and seeks to invoke this Court's subject matter jurisdiction over all Defendants under the expropriation exception of the Foreign Sovereign Immunities Act ("FSIA").  28 U.S.C. § 1605(a)(3).

The expropriation exception requires some commercial-activity nexus between the expropriation and the United States, and the D.C. Circuit has held on at least four occasions that, when the defendant in question is a foreign state, the expropriated property must be in the United States in connection with a commercial activity that the foreign state carries on here.  Venezuela is indisputably a foreign state, and H&P does not allege that the expropriated property is in the United States.  That ends the matter; Venezuela is immune from suit under the FSIA.

To salvage its claim, H&P has now suggested that a Third Circuit decision holding that Defendant PDVSA is Venezuela's alter ego alters the jurisdictional analysis.  It does not.  H&P has not alleged any facts that would support piercing the veil between Venezuela and PDVSA. More important, however, the commercial-activity nexus in the expropriation exception turns on the *status* of the sovereign entity.  If the sovereign entity is a foreign state under the FSIA, as Venezuela is, then the expropriated property must be in the United States.  If the sovereign entity

is an agency or instrumentality of a foreign state under the FSIA, then a different rule applies. There is no conceivable veil-piercing theory that can alter Venezuela's status as a foreign state under the FSIA. It is and will remain a foreign state under the statute, even if PDVSA is its alter ego. That resolves the issue. H&P's claim against Venezuela is not within the subject matter jurisdiction of the federal courts. Venezuela is, accordingly, entitled to dismissal.

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

The Court is familiar with the lengthy history of this case, which has been pending for nearly 11 years. Both the Supreme Court and the D.C. Circuit have issued decisions on the jurisdictional issues under the FSIA—the latter two decisions—and this Court and Judge Wilkens have also authored a number of opinions and orders in the matter. Venezuela will not recount the full history or all of the allegations of the Complaint but rather will confine itself only to the matters necessary to resolve this renewed motion.

H&P filed this case in September 2011, along with its Venezuelan subsidiary, Helmerich & Payne de Venezuela ("H&P-V"), alleging that Venezuela and the PDVSA Defendants expropriated certain property of H&P-V in violation of international law. H&P also alleged that the PDVSA Defendants breached certain drilling services contracts. The contract claims and H&P-V's expropriation claim have now been dismissed. The only claim remaining before this Court is H&P's contention that Venezuela and the PDVSA Defendants expropriated the assets of H&P-V in violation of international law. *See* Complaint ("Compl.") ¶¶ 172-81. The relevant facts on that claim are few, which Venezuela does not dispute on this motion.

Until 2010, H&P-V provided contract drilling services for the PDVSA Defendants. *Id.* ¶ 16. In June 2010, H&P alleges that employees of the PDVSA Defendants and members of the Venezuelan National Guard "blockaded" H&P-V's business premises in Ciudad Ojeda in

western Venezuela and Anaco in eastern Venezuela.  *Id.* ¶¶ 59-60.  Among the assets at both locations were drilling rigs and other associated property used for drilling services.  *Id.* ¶¶ 77-79 (listing the types of property).  H&P-V also owned land in Anaco with various improvements or fixtures.  *Id.* ¶ 80.  On June 29, 2010, the Venezuelan National Assembly declared that all H&P-V drilling rigs and associated property would be of "public benefit and good" and recommended that the National Executive issue a "Decree of Expropriation," which President Hugo Chávez did the same day.  *Id.* ¶¶ 67-68.

H&P claims that the expropriation took all of H&P-V's productive assets and therefore deprived H&P of its business in Venezuela.  *Id*. ¶¶ 75, 80.  H&P further claims that the taking was without compensation and discriminated against it because of its status as an American corporation.  *Id.* ¶¶ 180-81.  Notably, all of the allegedly expropriated assets remain in Venezuela.  *See id.* ¶ 76 (alleging on information and belief that "the PDVSA Defendants have been operating H&P-V's business as a going concern" using the expropriated assets and former H&P-V employees); *id.* ¶ 81 (alleging that "Defendants" operate the former H&P-V business as a state-owned commercial enterprise); *id.* ¶ 84 (alleging on information and belief that "Defendants currently employ H&P-V's assets and former employees to provide drilling and other services that H&P-V once provided in Venezuela").[1]

Plaintiff concedes that Defendant Venezuela is a "foreign sovereign" and "foreign state" under the FSIA, *id.* ¶¶ 11, 173, and seeks to invoke this Court's subject matter jurisdiction under the FSIA's expropriation exception.  28 U.S.C § 1605(a)(3).  Venezuela now moves to dismiss because that exception permits jurisdiction over a foreign state only when the allegedly

---

[1]  The PDVSA Defendants challenge certain of these factual assertions, but the Court need not resolve those issues on this motion.  For purposes of this motion, Venezuela does not contest them.

expropriated property is in the United States in connection with a commercial activity carried on by the foreign state in the United States. *Id.* Venezuela raised this issue in its original motion to dismiss filed on August 31, 2012 (Dkt. 24-1 at 15-17 (numbered as pages 20-22 by the CM/ECF system)). Neither Judge Wilkens nor this Court has ever ruled on it, however, because the parties agreed to defer resolution of the matter pending the Court's consideration of other jurisdictional issues under the FSIA that would have disposed of the case against all Defendants. Those issues have largely been resolved as to Venezuela, and this matter is now ripe for resolution. In accordance with this Court's order of April 14, 2022, (Dkt. 145), at 5-6 ("Order"), Venezuela now renews its motion on this issue and addresses the matters raised in the Court's Order.

## ARGUMENT

The FSIA provides the sole basis for jurisdiction over a foreign sovereign in U.S. courts. *Argentine Republic v. Amerada Hess Shipping Co*., 488 U.S. 428, 434 (1989). H&P concedes that Venezuela is a "foreign state" under the FSIA. Compl. ¶¶ 11, 173. Thus, Venezuela is presumptively immune from suit, 28 U.S.C. § 1604, and H&P bears the initial burden of pleading facts to bring the claim within one of the FSIA exceptions to immunity. *See Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013) ("the FSIA begins with a presumption of immunity, which the plaintiff bears the initial burden to overcome by producing evidence that an exception applies"). On this motion, Venezuela does not contest the well-pleaded factual allegations of the Complaint. Accordingly, while the Court must take those well-pleaded facts as true, *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000), the pleaded facts must establish the elements of an exception. *Id.*; *see Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co*. 137 S. Ct. 1312,

1316 (2017) (*Helmerich III*) ("[T]he relevant factual allegations must make out a legally valid claim that a certain kind of right is at issue (*property* rights) and that the relevant property was taken in a certain way (in violation of international law).  A good argument to that effect is not sufficient."); *Schubarth v. Federal Republic of Germany*, 891 F.3d 392, 399 (D.C. Cir. 2018) (*Schubarth I*) ("[a] plaintiff must make more than a nonfrivolous showing that FSIA's expropriation exception applies").  Here, H&P fails to allege that the expropriated property (or property exchanged for it) is in the United States in connection with a commercial activity that Venezuela undertakes in this country.  Accordingly, there is no jurisdiction over Venezuela under the expropriation exception, and the case must be dismissed.

**I.     AS A FOREIGN STATE, VENEZUELA IS NOT SUBJECT TO JURISDICTION UNDER THE EXPROPRIATION EXCEPTION BECAUSE THE ALLEGEDLY TAKEN PROPERTY IS NOT IN THE UNITED STATES IN CONNECTION WITH A COMMERCIAL ACTIVITY THAT VENEZUELA CARRIES ON IN THE UNITED STATES.**

H&P seeks to invoke this Court's jurisdiction over Venezuela solely under FSIA's expropriation exception.  28 U.S.C. § 1605(a)(3); *see* Compl. ¶ 14.[2]  That provision permits exercise of jurisdiction over a foreign state when:

> rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign

---

[2]  Although the Complaint also suggests that the commercial activities exception, 28 U.S.C. § 1605(a)(2), applies to certain alleged conduct, H&P has never claimed that the alleged expropriation comes with its ambit.  H&P's invocation of the commercial activities exception related to breach of contract claims it asserted against the PDVSA Defendants.  The D.C. Circuit rejected that argument, and the Supreme Court denied certiorari on the issue.  *Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, 784 F.3d 804, 816-19 (D.C. Cir. 2015) (*Helmerich I*), *cert. denied*, 137 S. Ct. 1246 (2017) (denying H&P's cross-petition on the commercial activities exception).  In any event, an expropriation is not a commercial act as a matter of law and thus does not come within the commercial activities exception.  *Ivanenko v. Yanukovich*, 995 F.3d 232, 238-39 (D.C. Cir. 2021) (property expropriation is not a commercial activity); *Rong v. Liaoning Provincial Gov't*, 452. F.3d 883, 890-91 (D.C. Cir. 2006) (same).

> state; or that property or any property exchanged for such property
> is owned or operated by an agency or instrumentality of the foreign
> state and that agency or instrumentality is engaged in a commercial
> activity in the United States.

*Id.*  To satisfy the statute, H&P must plead that "(1) rights in property are at issue; (2) those rights were taken in violation of international law; and (3) a [commercial-activity] nexus exists between the expropriation and the United States."  *Schubarth I*, 891 F.3d at 398-99  (quoting *Nemariam v. Federal Democratic Republic of Ethiopia*, 491 F.3d 470, 475 (D.C. Cir. 2007)).  This motion concerns only the commercial-activity nexus.[3]

The expropriation exception embodies the commercial-activity nexus in two distinct clauses, the applicability of each turning on the *status* of the defendant under the FSIA.  The statute divides foreign sovereign entities into two categories: (1) foreign states; and (2) agencies and instrumentalities of foreign states, *see* 28 U.S.C. § 1603(a)-(b), and carefully distinguishes the former from the latter.  *de Csepel v. Republic of Hungary*, 859 F.3d 1094, 1107 (D.C. Cir. 2017) (*de Csepel I*); *see id.* at 1108 (noting "the well-worn distinction between foreign states and agencies and instrumentalities").  The line between the two is categorical.  "[I]f the core functions of the entity are governmental, it is considered the foreign state itself; if commercial, the entity is an agency of instrumentality of the foreign state."  *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003); *see also de Csepel v. Republic of Hungary*, 27 F.4th 736, 743 (D.C. Cir. 2022) (*de Csepel II*) (if the "core functions are commercial, the entity is an agency or instrumentality; if [the defendant's] core functions are governmental, it is considered

---

[3]  Venezuela continues to believe that H&P has no rights in the allegedly expropriated property and that, in any event, any such rights in that property were not taken in violation of international law.  *See Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, 743 F. App'x 442, 455-56 (D.C. Cir. 2018) (*Helmerich IV*).  This Court need not resolve the issues discussed in *Helmerich IV*.  H&P's failure to plead facts to establish any one element of the expropriation exception dooms its claim.  Thus, the failure to satisfy the commercial-activity nexus is fatal to H&P's case against Venezuela.

the foreign state itself") (internal quotes omitted); *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151-53 (D.C. Cir. 1994) (same).  There is no doubt that Venezuela is a foreign state.   H&P has sued the government of Venezuela—the state itself—and concedes that Venezuela is a "foreign sovereign" and "foreign state" under the FSIA.  Compl. ¶¶ 11, 173.  That status is dispositive of the jurisdictional issue here.

The expropriation exception's first nexus clause permits exercise of jurisdiction over a "foreign state" when the allegedly expropriated "property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state."  28 U.S.C. § 1605(a)(3).  By contrast, the second clause permits jurisdiction over agencies and instrumentalities of a foreign state when the allegedly expropriated "property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States."  *Id.*  As the D.C. Circuit has repeatedly held, an expropriation claim against a foreign state such as Venezuela falls within the jurisdiction of the federal courts only if its satisfies the first clause, not the second.

The D.C. Circuit first addressed the issue definitively in *Simon v. Republic of Hungary*, 812 F.3d 127 (D.C. Cir. 2016) (*Simon I*), *abrogated in part on other grounds by Federal Republic of Germany v. Philipp*, 141 S. Ct. 703 (2021) (*Phillip II*),[4] holding that the "nexus

---

[4]  *Philipp II* addressed a holding of *Simon* not at issue on this motion.  The Supreme Court held that the expropriation exception's phrase "rights in property taken in violation of international law" references "the international law of expropriation rather than of human rights" and therefore does not reach acts of genocide by a nation against its own citizens, *Philipp II*, 141 S. Ct. at 712, which was the basis on which *Simon I* had concluded that the plaintiffs there could proceed against Hungary notwithstanding that they were Hungarian nationals.  *Philipp II* does not address the issue Venezuela raises and which *Simon I* and subsequent D.C. Circuit decisions have resolved definitively.  On the proper construction of the commercial-activity nexus clauses of the expropriation exception, *Simon I* and the subsequent cases cited above remain controlling.

requirement differs somewhat for claims against the foreign state itself . . . as compared with claims against an agency or instrumentality of the foreign state," *id*. at 146, and requiring the *Simon I* plaintiffs to meet the first clause to establish jurisdiction over the Republic of Hungary. *Id*.  The court reiterated *Simon I* in *de Csepel I* and discussed the distinction between the two commercial-activity nexus clauses at length.  *de Csepel I*, 859 F.3d at 1107-08.  It noted the incongruity of applying the second nexus clause to a foreign state (as opposed to an agency or instrumentality), *id*, and summed up the proper construction of the commercial-activity nexus element of the expropriation exception succinctly:

> A foreign state loses its immunity if the claim against it satisfies the exception by way of the first clause of the commercial-activity nexus requirement; by contrast, an agency or instrumentality loses its immunity if the claim against it satisfies the exception by way of the second clause.

*Id.* at 1107.[5]

Since *de Csepel I*, the circuit has twice reaffirmed that jurisdiction lies over a foreign state under the expropriation exception only if plaintiff satisfies the first clause of the commercial-activity nexus.  First, in *Schubarth I*, the court, relying on *de Csepel I*, held that a

---

*See United States v. Adewani*, 467 F.3d 1340 (D.C. Cir. 2006) ("When the Supreme Court vacates a judgment of this court without addressing the merits of a particular holding in the panel opinion, that holding continue[s] to have precedential weight, and in the absence of contrary authority, we do not disturb it.") (internal quotation marks omitted).

[5]  *de Csepel I* also rejected an argument that H&P previously made in this Court that *Simon I* conflicted with the D.C. Circuit's holding in *Agudas Chasidei Chabad of U.S. v. Russian Federation*, 528 F.3d 934 (D.C. Cir. 2008), and therefore was not controlling circuit precedent. This Court noted tension between *Chabad* and *Simon I* in a decision on a motion to compel in this case, *see Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, 185 F. Supp. 3d 233, 239-42 (D.D.C. 2016) (*Helmerich II*), and stated at the time that it was not prepared to resolve the issue without further briefing.  *Id.* at 242.  *de Csepel I* has now definitively resolved the question whether *Simon I* or *Chabad* is controlling, 859 F.3d at 1105-07, and the subsequent cases cited above have conclusively settled the issue that for a foreign state to be subject to jurisdiction under the expropriation exception, the plaintiff must satisfy the first clause of the commercial nexus prong.

foreign state is subject to jurisdiction under the expropriation exception only if the claim satisfies the first clause of the exception. *Schubarth I*, 891 F.3d at 401. Later, in *Philipp v. Federal Republic of Germany*, 894, F.3d 406 (D.C. Cir. 2018) (*Philipp I*), *vacated on other grounds*, 141 S. Ct. 703 (2021), the court again confirmed that "with respect to foreign states . . . , the expropriation exception's second requirement—'an adequate commercial nexus between the United States and the defendant[]'—is satisfied only when the property is in the United States." *Id.* at 414 (citation omitted). In other words, a foreign state is subject to jurisdiction under the expropriation exception only if the property is in the United States.

Following *Simon I* and *de Csepel I*, several district courts, including this Court, have also held that a claim of jurisdiction under the expropriation exception must satisfy the first commercial-activity nexus clause. *Schubarth v. Federal Republic of Germany*, No. 14-cv-2140 (CRC), 2021 WL 7889662, at 5 (D.D.C., Jan. 25, 2021) (*Schubarth II*) (Cooper, J.) (the D.C. Circuit "held, *in categorical terms*, that 'a foreign state retains its immunity unless the first clause of the commercial-activity nexus requirement is met") (emphasis added) (citing *de Csepel I*); *see also Luxepress 2016 Corp. v. Gov't of Ukraine*, No. 18-cv-812 (TSC), 2020 WL 1308357, at \*5 (D.D.C. Mar. 19, 2020) (same); *Simon v. Republic of Hungary*, 443 F. Supp. 3d 88, 102 (D.D.C. 2020) (*Simon II*) (same).

Because Venezuela is indisputably a foreign state, H&P's claim against it falls within the expropriation exception only if the alleged expropriated property (or property exchanged for the alleged expropriated property)[6] is in the United States in connection with a commercial activity that Venezuela carries on in the United States. The Complaint makes no such allegation. H&P describes the expropriated property as "eleven drilling rigs and all of the supporting

---

[6] The Complaint does not allege that any of the allegedly expropriated property has been exchanged for any other property.

infrastructure." *See* Compl. ¶¶ 25-26, 74-75.  H&P does not allege that any of the property is in the United States, much less that any such property is here in connection with any commercial activity in which Venezuela itself is engaged.  In fact, to the contrary, H&P affirmatively alleges that the property remains in Venezuela.  *See id.* ¶¶ 76, 81.  That is the end of the matter.  H&P's claim against Venezuela is not within the expropriation exception, and thus the claim must be dismissed for a lack of subject matter jurisdiction.

## II.   PIERCING THE VEIL BETWEEN VENEZUELA AND THE PDVSA DEFENDANTS DOES NOT CONFER JURISDICTION UNDER THE EXPROPRIATION EXCEPTION BECAUSE IT DOES NOT ALTER VENEZUELA'S STATUS AS A FOREIGN STATE UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT.

At the December 2021 status conference, H&P for the first time suggested that this Court could potentially exercise jurisdiction over Venezuela under a veil-piercing theory.[7]  Apparently, H&P believes that if it can show that Venezuela controls one or both of the PDVSA Defendants, then that will change the jurisdictional analysis.

It is difficult for Venezuela to address whatever veil-piercing theory H&P may have in mind because H&P has never articulated it in any detail.  Even discounting the stay that was in place for nearly three years, at no time during the eight years when this case was actively litigated did H&P ever suggest that Venezuela was subject to jurisdiction under such an approach.  The theory seems to have been fashioned from whole cloth, prompted by the D.C. Circuit's decisions in *Simon I*, *de Csepel I*, and their progeny, and the Third Circuit's decision in

---

[7]   At the December status conference, H&P also seemed to suggest that this case is distinguishable from *Simon I, de Csepel I*, and their progeny.  H&P has never described those distinctions, but it is hard to understand how they can be relevant.  As discussed below, application of the commercial-activity nexus requirement of the expropriation exception turns on the *status* of the defendant.  The statute sets one standard for foreign states and another for agencies and instrumentalities.  Whatever factual distinctions H&P may perceive between this case and *Simon I, de Csepel I, Schubarth I*, and *Philipp I*, they do not alter Venezuela's status as a foreign state under the FSIA.

an unrelated case, *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019) (*Crystallex II*), affirming a district court judgment holding that PDVSA is Venezuela's alter ego for purposes of enforcing an arbitral judgment against Venezuela.

Whatever its source, the theory suffers from two defects. *First*, even assuming that H&P could cobble together a sensible veil-piercing theory related to the challenged expropriation, that does not alter the dispositive fact: Venezuela remains a foreign state under the FSIA. Because *de Csepel I* and its progeny have categorically held that foreign states are only subject to jurisdiction under the expropriation exception when the allegedly expropriated property is in the United States, any veil-piercing theory is deficient as a matter of law. Indeed, as discussed below, a veil-piercing theory would, if anything, end the case against all Defendants by conferring foreign-state status on each of them. The legal defect alone warrants Venezuela's dismissal.

*Second,* befitting the newly-minted, afterthought nature of the theory, H&P has not pleaded any facts warranting piercing the veil between Venezuela and the PDVSA Defendants. As "a baseline rule, . . . 'government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such.'" *GSS Grp. Ltd v. Nat'l Port Auth.*, 680 F.3d 805, 814 (D.C. Cir. 2012) (quoting *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 626-27 (1983) (*Bancec*)). The burden falls on H&P to plead facts that would warrant disregarding the distinction. Its failure to do so only underscores the protean nature of the theory. While crafted to salvage a claim that the expropriation exception bars, it does not even meet the minimum threshold. It fails for that reason as well.

A.  **Foreign States Are Categorically Immune from Jurisdiction Under the Expropriation Exception Unless the Expropriated Property Is in the United States.**

The veil-piercing concept H&P suggested at the December status conference suffers from a fundamental flaw.  As this Court recognized in *Schubarth II*, the holdings in *Simon I, de Csepel I*, and their progeny are "categorical."  *Schubarth II*, 2021 WL 7889662, at *5.  Foreign states retain their immunity under the expropriation exception unless plaintiff pleads facts satisfying the first clause of the commercial-activity nexus.  *See supra* Section I.  Therefore, to overcome that jurisdictional limitation, H&P must conjure some theory that would deprive Venezuela of its status as a foreign state under the FSIA.  It articulated no such theory at the December status conference, and it is nearly impossible to conceive of circumstances in which such a recategorization would be warranted.

1.  **Veil Piercing Does Not Alter the Status of an Entity as a Foreign State Under the FSIA.**

In the ordinary context, veil piercing attributes the property or actions of a corporation to a shareholder or of a subsidiary corporation to a parent.  More precisely, veil-piercing treats the property or actions of a controlled entity or person as the property or actions of a controlling entity or person.  *See, e.g.*, *Bancec*, 462 U.S. at 630-32 (treating an instrumentality's legal claims, which are a form of property, as those of Cuba because Cuba controlled the instrumentality).  In that respect, *Crystallex II* plows no new ground under the FSIA.  In that case, Crystallex obtained an arbitral judgment against Venezuela.  It then confirmed that judgment through an action in the District of Columbia.  The district court held that it had jurisdiction over Venezuela under the FSIA's arbitration exception, 28 U.S.C. § 1605(a)(6), which, unlike the expropriation exception, draws no distinction between foreign states and agencies and instrumentalities.  *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,

244 F. Supp. 3d 100, 109 (D.D.C. 2017) (*Crystallex I*).  In fact, Venezuela did not contest the district court's jurisdiction in the confirmation proceedings.  *Id.* at 109 n.12.

After the district court confirmed the arbitral award, Crystallex took its judgment to Delaware and initiated attachment proceedings against shares of Petróleos de Venezuela Holding, a U.S.-based wholly-owned subsidiary of PDVSA.  Both Venezuela and PDVSA objected, arguing that Crystallex sought to attach property of PDVSA, not Venezuela, to satisfy an arbitral judgment against Venezuela.  Crystallex raised its veil-piercing theory, therefore, in a post-judgment attachment context.  In other words, Crystallex sought to treat the property of PDVSA as property of Venezuela, and the ultimate effect of the veil-piercing there was to treat PDVSA as Venezuela, not Venezuela as PDVSA, for purposes of that particular arbitral award. In fact, the Third Circuit concluded that it had jurisdiction over Venezuela under the doctrine of ancillary jurisdiction, but noted that the original confirmation proceedings rested on the arbitration exception, 28 U.S.C. § 1605(a)(6); *see Crystallex II*, 932 F.3d at 136-37, and that the court could exercise jurisdiction over PDVSA *under that exception* as long "so long as it is Venezuela's alter ego."  *Id.* at 139; *see also id.* at 138 (under Third Circuit precedent, "the District Court's jurisdiction over Venezuela [under the arbitration exception] would extend to PDVSA so long as it is Venezuela's alter ego under *Bancec*").  It then affirmed the district court's decision on the merits of the veil-piercing arguments.  Nothing in *Crystallex II*, however, suggests that Venezuela ceased to be a foreign state under the FSIA or that the veil-piercing somehow converted it into an agency or instrumentality under the FSIA for jurisdictional purposes.[8]  Thus, it is difficult to see how *Crystallex II* has any relevance here; whether or not

---

[8]  Venezuela continues to believe that *Crystallex II* decided the veil-piercing merits erroneously, and both Venezuela and PDVSA continue to defend their interests in the matter.  This Court

Venezuela controls PDVSA in a way that permits piercing the veil between the two, Venezuela remains a foreign state under the FSIA, and, as discussed below, that status is dispositive.

> ### 2. Application of the Commercial-Activity Nexus of the Expropriation Exception Is Determined by the Status of the Entity in Question, Not the Status of an Entity that It Purportedly Controls.

This Court's opinion in *Schubarth II* is the only decision that Venezuela has found addressing veil-piercing under the expropriation exception in any detail.  As this Court noted, *Schubarth II* rejects what appears to be an identical theory that H&P seeks to advance here.  *See* Order (Dkt. 145) at 5.  There, the Court correctly concluded that *de Csepel I* and cases following it have adopted a "categorical" approach to determining when a sovereign entity is subject to jurisdiction under the FSIA's expropriation exception.  *Schubarth II,* 2021 WL 7889662, at *5.  Other decisions in this district read *Simon I, de Csepel I* and their progeny the same way.  *Luxepress 2016 Corp.*, 2020 WL 1308357, at *5; *Simon II*, 443 F. Supp. 3d at 102; *see also Ambar v. Federal Republic of Germany*, No. 20-3587 (CKK), 2022 WL 782388, at *3 (D.D.C. Mar. 15, 2022) (noting only the first commercial-nexus clause in the expropriation exception was applicable because the only defendant was a foreign state).  Moreover, the "categories," and thus application of the expropriation exception, turn on the *status* of the entity under the statute.  If the entity is the foreign state itself, then jurisdiction lies only under the first commercial-activity nexus clause—that is, the property must be in the United States in connection with a commercial activity that the foreign state is carrying on in the United States.  Only if the entity is an agency or instrumentality may the plaintiff proceed under the second clause, which permits jurisdiction when the agency or instrumentality owns or operates the expropriated property and is engaged in a commercial activity in the United States.

---

need not enter that fray.  Even assuming that the Third Circuit decided *Crystallex II* correctly, Venezuela still prevails here because it remains a "foreign state" under the FSIA.

As *de Csepel I* noted, this distinction between foreign states and agencies or instrumentalities, with different rules depending on status, pervades the FSIA. *de Csepel I*, 859 F.3d at 1108; *see also Garb v. Republic of Poland*, 440 F.3d 579, 590 (2d Cir. 2006) ("The distinction between, on the one hand, agencies or instrumentalities of a foreign state, and, on the other hand, other organs or subdivisions of a foreign state, pervades the FSIA."). While the term "foreign state" as used in the statue "*includes . . .* an agency or instrumentality of a foreign state," 28 U.S.C. § 1603(a) (emphasis added), the converse is not true; the phrase "agency or instrumentality" does not include a foreign state. *See* 28 U.S.C. § 1603(b) (defining the term "agency or instrumentality of a foreign state" to be distinct from the sovereign); *Gates v. Victor Fine Foods*, 54 F.3d 1457, 1462 (9th Cir. 1995) (the FSIA "contradicts any interpretation that would equate 'an agency or instrumentality' with 'a foreign state.'"); *see also Crist v. Republic of Turkey*, No. 95-7149, 1997 WL 71739, at*3 (D.C. Cir. 1997) (unpublished memorandum opinion) ("Although the term 'foreign state' in the context of FSIA's sovereign immunity exceptions encompasses an agency or instrumentality of a state, the converse is not true; that is, the term 'agency or instrumentality' does not include the foreign state itself.").[9]  In fact, the applicability of a number FSIA provisions turns on the status of the entity in question.  For example, the FSIA permits an award of punitive damages against agencies or instrumentalities but not against foreign states.  28 U.S.C. § 1606.  It also contains different provisions for service of process based on an entity's status as a foreign state or agency or instrumentality, *id.* § 1608(a)-(b), and even for attachment and execution on property after judgment. *Id.* § 1610(a)-

---

[9]  *Crist* is an unpublished memorandum opinion issued before January 1, 2002 and, under D.C. Circuit Rules, "is not to be cited as precedent."  D.C. Cir. R. 32.1(b)(1)(A).  Venezuela cites it only for its persuasive value, noting that other district courts in the district have relied upon it. *See, e.g., Taylor v. Kingdom of Sweden*, No. 18-1133 (RJL), 2019 WL 3536599, at *3 (D.D.C., Aug. 2, 2019).

(b); *see also Ministry of Def. & Support for Armed Forces of Islamic Republic of Iran v. Elahi*, 546 U.S. 450, 452 (2006) (distinction between status as a foreign state and agency or instrumentality is "critical" in applying the FSIA's attachment and execution provisions).  Thus, there is nothing unusual about status determining the appropriate legal rule under the FSIA, and it is even less surprising that Congress in the expropriation exception treated sovereign entities differently based on their status as a foreign state or agency or instrumentality.

The FSIA codified the restrictive theory of sovereign immunity under which foreign sovereigns remain immune from suits for governmental acts but not commercial acts.  *Philipp II*, 141 S. Ct. at 713 (noting that the FSIA "codif[ies] the restrictive theory of sovereign immunity" under which "immunity extends to a sovereign's public but not private acts"); *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 487 (1983) (under restrictive theory, "immunity is confined to suits involving the foreign sovereign's public acts, and does not extend to cases arising out of a foreign state's strictly commercial acts").  The expropriation exception is faithful to that general principle.  Expropriations are sovereign acts.  *Ivanenko v. Yanukovich*, 995 F.3d 232, 238-39 (D.C. Cir. 2021); *Rong v. Liaoning Provincial Gov't*, 452. F.3d 883, 890-91 (D.C. Cir. 2006).  It is one thing to exercise jurisdiction over an agency or instrumentality—which is usually a governmentally-owned commercial corporation, *Transaero*, 30 F.3d at 151-53—for ownership or operation of expropriated property, but even that is carefully circumscribed under the FSIA.[10] It is another altogether to hale the *sovereign itself* into court to answer for a governmental act.  Therefore, the FSIA limits the circumstances in which that occurs to a rare situation: the sovereign is actually using the property in commerce in the United States; or the sovereign is marketing the expropriated property in the United States.  Thus, the "categorical" approach that

---

[10]   For the reasons the PDVSA Defendants have articulated, those circumstances are not met here.

this Court adopted in *Schubarth II* is undeniably correct and fits with the overall structure and purposes of the statute.  The application of the expropriation exception turns on the status of the sovereign entity in question.  When that entity is a foreign state, only the first commercial-activity nexus clause will carry the day.

### 3.   Because Veil Piercing Cannot Alter Venezuela's Status a Foreign State Under the FSIA, No Veil-Piercing Theory Can Salvage H&P's Claim Against Venezuela Under the Expropriation Exception.

Because status is dispositive, any veil-piercing theory that H&P might conjure is of no consequence.  H&P concedes Venezuela is a "'foreign sovereign' and 'foreign state' within the meaning of the FSIA."  Compl. ¶ 173; *id.* ¶ 11 ("Defendant Bolivarian Republic of Venezuela . . . is a foreign state").  That admission alone should end the matter.[11]  But even if H&P's allegations are not binding for some reason, a veil-piercing theory does not solve the problem.  Whether or not the PDVSA Defendants are treated as the alter egos of Venezuela, Venezuela's "core functions" remain governmental and thus Venezuela remains a foreign state under the FSIA.  *de Csepel II*, 27 F.4th at 743; *Transaero*, 30 F.3d at 153.  Any other result would be nonsensical for at least two reasons.

*First*, veil-piercing turns on the concept that one entity controls another either effectively as principal or as a tool for fraud.  *See Bancec*, 462 U.S. at 629-30.  But it makes no sense to cloak the controlling entity with the status of the controlled entity.  Nothing in *Bancec* or *Crystallex II* suggests that a foreign state loses its status as such under the FSIA because its control over an agency or instrumentality is so extensive that it warrants piercing the veil

---

[11]  Venezuela believes that the allegation that Venezuela is a "foreign sovereign" is an allegation of fact and thus constitutes a judicial admission that H&P may not contradict.  *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 876 (D.C. Cir. 2014) ("factual allegations in operative pleadings are judicial admissions of fact").  By alleging that Venezuela is a "foreign sovereign," H&P alleges that Venezuela functions as a government and that its core functions are governmental.

between the two.  In fact, both decisions cloaked the agency or instrumentality with the status of the sovereign.

The cases directly addressing the issue under the FSIA are sparse but are consistent with the outcome in *Bancec* and *Crystallex II* and contrary to H&P's position; if the agency or instrumentality is, in fact, the alter ego of the foreign state, then its immunity under the FSIA is the same as the foreign state's.  *See Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229, 237 (5th Cir. 2004) ("If the [entity in question] is the [Republic of Congo's] alter ego, it would have to undergo the same immunity analysis as the [Republic of Congo].").  Applying that principle here would cloak the PDVSA Defendants with Venezuela's status as a foreign state and thus require that, even as to them, the property would need to be in the United States in connection with a commercial activity that Venezuela carries on here.  *See Crystallex II*, 932 F.3d at 138-39 (veil-piercing theory makes the basis for jurisdiction over Venezuela under the FSIA, the controlling party, applicable to PDVSA, the controlled party).  That would end the case against *all Defendants*, not merely Venezuela.

The Court's opinion in *Schubarth II* supports that view as well.  The *Schubarth II* plaintiff contended the second commercial-nexus clause in the expropriation exception "implicitly includes any *principal* that exercises day-to-day control over the agency or instrumentality."  *Schubarth II*, 2021 WL 7889662, at *7.  Quite rightly, the Court rejected that argument, noting that it "seeks to justify haling into court an additional party that the relevant statutory text does not mention."  *Id.*  In addition, the argument stands normal alter ego principles on their head.  Veil-piercing doctrine disregards corporate status when "a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created."  *Bancec*, 462 U.S. at 629.  The argument advanced in *Schubarth II* and apparently

asserted here would cloak the principal with the status of the agent, not the agent with the status of the principal.  Indeed, this Court's conclusion in *Schubarth II* avoids the absurdity of implying that the agency or instrumentality controls the foreign state, not the other way around.

*Second*, as this Court noted in *Schubarth II*, if a veil-piercing theory could convert a foreign state into an agency or instrumentality, that would effectively gut the holdings in *Simon I, de Csepel I*, and those decisions following them.  *Schubarth II*, 2021 WL 7889662, at *6 n.5. Plaintiffs challenging expropriations would simply assert a veil-piercing theory, which, whether ultimately meritorious or not, would embroil foreign sovereigns in potentially massive and intrusive jurisdictional discovery.  As this Court noted, not only would that change the status quo in which sovereigns are dismissed promptly if the expropriated property is not in the United States, but it would also run afoul of the FSIA's purpose to relieve foreign sovereigns of the burdens of litigation.  *Id*. (citing *Process & Indus. Devs. Ltd. v. Federal Republic of Nigeria*, 962 F.3d 576, 581 (D.C. Cir. 2020)).

It would also affect other portions of the FSIA.  The expropriation exception is not the only statutory provision in which the distinction between foreign states and agencies and instrumentalities is critical.  Cloaking foreign states with agency and instrumentality status under a veil-piercing theory would alter the means by which the sovereign itself could be served under the statute, 28 U.S.C. § 1608(a)-(b), the susceptibility of foreign sovereigns to punitive damages claims, *id* § 1606, and potentially the sovereign property subject to attachment and execution after judgment.  *Id*. § 1610(a)-(b).  Nothing in *Bancec*, *Crystallex II*, or any other veil-piercing decision suggests that the doctrine can alter the statutory text in that manner.  There is no veil-piercing theory that can salvage H&P's claim here.  Venezuela is not subject to jurisdiction under the expropriation exception and should be dismissed.

**B.**     **H&P's Complaint Does Not Allege an Agency Relationship Between Venezuela and the PDVSA Defendants or any Fraud or Injustice that Permits Piercing the Veil Between Venezuela and the PDVSA Defendants.**

In addition to the legal defects of the veil-piercing theory, H&P has failed to plead facts that would warrant piercing the veil between Venezuela and the PDVSA Defendants.  Because veil-piercing is the exception, not the rule, *see Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) (describing corporate veil-piecing in the sovereign immunity context as "the rare exception"); *Bancec*, 462 U.S. at 626-27, the proponent—in this case, H&P—bears the burden of alleging facts, taken as true, to establish a basis for disregarding the separateness between Venezuela and the PDVSA Defendants.  *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 447 (D.C. Cir. 1990) ("It is further clear that the *plaintiff* bears the burden of asserting facts sufficient to withstand a motion to dismiss regarding the agency relationship."); *TIG Ins. Co. v. Republic of Argentina*, No. 18-mc-00129, 2022 WL 1154749, at *8 (D.D.C. Apr. 18, 2022) (plaintiff bears the burden of asserting fact to establish either an agency relationship or fraud or injustice).  H&P has not come close.

The Supreme Court has recognized two veil-piercing theories concerning foreign sovereign entities.  Either the entity must be "so extensively controlled by its owner that a relationship of principal and agent is created," or the recognition of the separateness between entities must "work fraud or injustice."  *Bancec*, 462 U.S. at 629.  The bar for either is high.  *See TIG Ins.*, 2022 WL 1154749, at *8 (noting that veil-piercing "presents an uphill battle").

Under the agency theory, H&P must plead facts establishing that Venezuela exercised such control over the PDVSA Defendants that "it significantly exceed[ed] the normal supervisory control exercised by any corporate parent over its subsidiary" or exercised its control in such a way that it "manifested its desire for the subsidiary to act upon the parent's behalf, the subsidiary has consented so to act, the parent has the right to exercise control over the subsidiary

with respect to matters entrusted to the subsidiary, and the parent exercises its control in a manner more direct than by voting a majority of the stock in the subsidiary or making appointments to the subsidiary's Board of Directors." *Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 848-49 (D.C. Cir. 2000) (citing RESTATEMENT (SECOND) OF AGENCY § 1).

To assert the fraud or injustice theory, H&P must allege facts establishing:

(1)   "[Venezuela] intentionally seeks to gain a benefit while using the legally separate status of its instrumentality as a shield to guard against concomitant costs or risks," *DRC, Inc. v. Republic of Honduras*, 71 F. Supp. 3d 201, 218 (D.D.C. 2014) (citing *Bancec*, 462 U.S. at 630-33);

(2)   "[Venezuela] unjustly enriches itself through the instrumentality," *id.* (citing *Transamerica Leasing*, 200 F.3d at 854);

(3)   "[Venezuela] uses its instrumentality to defeat a statutory policy," *id.* (citing *Transamerica Leasing*, 200 F.3d at 854); or

(4)    [Venezuela] has "cloaked [its instrumentality] with the apparent authority of the sovereign, and the complaining party reasonably relies upon that manifestation of authority." *Id.* (citing *Transamerica Leasing*, 200 F.3d at 850).

*see also TIG Ins.*, 2022 WL 1154749, at *9.

H&P pleads no facts under either approach. Nothing in H&P's Complaint even suggests any fact related to a fraud or injustice theory. On the agency theory, any allegations are legal conclusions and do nothing to suggest the type of control necessary to warrant piercing the corporate veil. *See  Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The veil-piercing theory fails for this reason as well.

**CONCLUSION**

For the foregoing reasons, this Court lacks subject matter jurisdiction under the FSIA over H&P's one remaining claim against Venezuela.  Venezuela, therefore, respectfully requests that the Court dismiss it from this litigation.

Respectfully submitted,


*/s/ William L. Monts III*

June 1, 2022                    William L. Monts III  (D.C. Bar No. 428856)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C.  20004-1109
Tel.  (202) 637-5600
Fax:  (202) 637-5910
E-Mail:  william.monts@hoganlovells.com


*/s/ Bruce D. Oakley*

Bruce D. Oakley  (D.C. Bar No. TX0102)
HOGAN LOVELLS US LLP
609 Main Street
Suite 4200
Houston, Texas  77002
Tel.  (713) 632-1400
Fax:  (713) 632-1401
E-Mail:  bruce.oakley@hoganlovells.com

*Attorneys for Defendant*
*Bolivarian Republic of Venezuela*

- 22 -

**CERTIFICATE OF SERVICE**

I certify that on June 1, 2022, I caused the foregoing Defendant Bolivarian Republic of Venezuela's Renewed Motion to Dismiss Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction and Memorandum of Points and Authorities in support thereof to be filed with the Clerk of Court using the ECF system and thereby served on all counsel of record.


_s/William L. Monts III_