## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HELMERICH & PAYNE INTERNATIONAL DRILLING CO. and HELMERICH & PAYNE DE VENEZUELA, C.A.,<br><br>Plaintiffs,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA, PETRÓLEOS DE VENEZUELA, S.A., and PDVSA PETRÓLEO, S.A.,<br><br>Defendants. | Case No. 11-cv-01735-CRC |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE DEFENDANTS' RENEWED MOTION TO DISMISS THE COMPLAINT

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

Joseph D. Pizzurro (D.C. Bar No. 468922)
Kevin A. Meehan (D.C. Bar No. 1613059)
Juan O. Perla (D.C. Bar No. 1660389)
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.: (202) 452-7373
Fax: (202) 452-7333
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

*Attorneys for Defendants Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A.*

Dated: October 10, 2023

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................1

BACKGROUND ................................................................................4

    A.  The Parties ..............................................................................4

    B.  Procedural History ....................................................................5

        1.   All of H&P-V's Claims Were Dismissed for
             Lack of Subject Matter Jurisdiction under the FSIA ...............6

        2.   This Court Ordered Plaintiff and the PDVSA Defendants to Provide
             Discovery on the Remaining Jurisdictional Issues ...............11

        3.   The Court Granted Plaintiff's Motion to Stay the Proceedings
             in View of the Political Situation in Venezuela ...............12

        4.   The Court Grants Plaintiff's Request to Lift the Stay and
             Orders the Parties to Litigate All Remaining Threshold Issues ...........13

        5.   The Republic Is Dismissed for Lack of Subject Matter
             Jurisdiction under the FSIA ...........................................15

    C.  The Facts Relevant to This Motion ...........................................15

ARGUMENT ................................................................................19

I.    THIS CASE MUST BE DISMISSED FOR LACK OF SUBJECT MATTER
     JURISDICTION UNDER THE FSIA ..................................................19

    A.  Plaintiff Failed to Prove a Taking of Its Rights in Property
       in Violation of International Law ...........................................20

        1.   H&P-IDC Continues to Exercise Its Shareholder
             Rights by Managing and Controlling H&P-V ...................21

        2.   H&P-IDC Has No Rights in H&P-V's Assets under Venezuelan Law ...............25

    B.  Plaintiff Failed to Establish the Requisite Jurisdictional Nexus with the United
       States as Required under the FSIA's Expropriation Exception ...................29

        1.   Plaintiff Failed to Establish that PDVSA Owns or Operates the
             Expropriated Property or Any Property Exchanged for Such Property ...............29

        2.   Plaintiff Failed to Establish that the PDVSA Defendants
             Are Engaged in Commercial Activity in the United States ...................31

II.   THIS CASE MUST BE DISMISSED FOR LACK OF PERSONAL
     JURISDICTION ................................................................32

**III.  H&P'S CLAIMS ARE BARRED BY THE ACT OF STATE DOCTRINE** ..................**35**

**CONCLUSION** ......................................................................................................................**38**

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Af-Cap, Inc. v. Chevron Overseas (Congo), Ltd.*,
  475 F.3d 1080 (9th Cir. 2007) ................................................................................. 34

*Afr. Growth Corp. v. Republic of Anglola*,
  Civ. No. 17-2469 (BAH), 2019 U.S. Dist. LEXIS 120571 (D.D.C. July 19, 2019) ......... 21, 33

*Animal Sci. Prods. v. Hebei Welcome Pharm. Co.*,
  138 S. Ct. 1865 (2018) ........................................................................................ 25

*Argentine Republic v. Amerada Hess Shipping Corp.*,
  488 U.S. 428 (1989) ............................................................................................ 19

*Asahi Metal Indus. Co. v. Superior Court of California*,
  480 U.S. 102 (1987) ............................................................................................ 33

*Banco Nacional de Cuba v. Sabbatino*,
  376 U.S. 398 (1964) ............................................................................................ 35

*Bock Holdings, LLC v. Republic of Honduras*,
  No. 21-81781-CIV-SINGHAL, 2023 U.S. Dist. LEXIS 25354 (S.D. Fla. Jan. 31, 2023) ....... 21

*Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*,
  136 S. Ct. 2539 (2016) ......................................................................................... 8

*\*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
  137 S. Ct. 1312 (2017) .................................................................................. 8, 9, 19

*Braka v. Bancomer, S.A.*,
  589 F. Supp. 1465 (S.D.N.Y. 1984),
  *aff'd*, 762 F.2d 222 (2d Cir. 1985) ......................................................................... 35

*Bristol-Myers Squibb v. Superior Court of California*,
  528 U.S. 255 (2017) ............................................................................................ 34

*Compania de Gas de Nuevo Laredo, S.A. v. Entex, Inc.*,
  686 F.2d 322 (5th Cir. 1982) ................................................................................. 37

*Comparelli v. Republica Bolivariana De Venezuela*,
  891 F.3d 1311 (11th Cir. 2018) .............................................................................. 36

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
  932 F.3d 126 (3d Cir. 2019) .................................................................................. 34

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)........................................................................................ 33, 34

*De Csepel v. Republic of Hungary*,
  859 F.3d 1094 (D.C. Cir. 2017) .......................................................................... 20, 34

*\*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003)........................................................................................ 25, 31

*Empresa Cubana Exportadora de Azucar y Sus Derivados v. Lamborn & Co.*,
 652 F.2d 231 (2d Cir. 1981) ............................................................................ 37

*\*Exxon Mobil Corp. v. Corporación CIMEX S.A.*,
 534 F. Supp. 3d 1 (D.D.C. 2021) ............................................................ 21, 23, 24

*Fed. Republic of Germany v. Philipp*,
 141 S. Ct. 703 (2021) ..................................................................................... 36

*First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.*,
 703 F.3d 742 (5th Cir. 2012) .......................................................................... 33

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
 462 U.S. 611 (1983) ........................................................................................ 31

*French v. Banco Nacional de Cuba*,
 23 N.Y.2d 46 (N.Y. 1968) ............................................................................... 37

*Gater Assets Ltd. v. Moldovagaz*,
 2 F.4th 42 (2d Cir. 2021) ................................................................................ 33

*Gilson v. Republic of Ireland*,
 682 F.2d 1022 (D.C. Cir. 1982) ....................................................................... 33

*GSS Grp. Ltd v. Nat'l Port Auth.*,
 680 F.3d 805 (D.C. Cir. 2012) ......................................................................... 33

*GSS Grp. Ltd. v. Nat'l Port Auth. of Liber. & Republic of Liberia*,
 822 F.3d 598 (D.C. Cir. 2016) ......................................................................... 33

*Guar. Tr. Co. of New York v. United States*,
 304 U.S. 126 (1938) ........................................................................................ 13

*Hausman* v. *Buckely*,
 299 F.2d 696 (2d Cir. 1962) ............................................................................ 25

*Helicopteros Nacionales de Colombia, SA v. Hall*,
 466 U.S. 408 (1984) ........................................................................................ 33

*Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venez.*,
 784 F.3d 804 (D.C. Cir. 2015) ..................................................................... 7, 11

*Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venez.*,
 971 F. Supp. 2d 49 (D.D.C. 2013) ........................................................ 6, 16, 20

*\*Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*,
 743 F. App'x 442 (D.C. Cir. 2018) ............................................................ passim

*Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venez.*,
 137 S. Ct. 2114 (2017) ...................................................................................... 8

*Helmerich Int'l Drilling Co. v. Bolivarian Republic of Venez.*,
 No. 11-cv-01735 (CRC), 2023 U.S. Dist. LEXIS 15576 (D.D.C. Jan. 31, 2023) ........ 15, 34, 38

*Ivanenko v. Yanukovich*,
 995 F.3d 232 (D.C. Cir. 2021) ......................................................................... 30

*Jiménez v. Palacios*,
   250 A.3d 814 (Del. Ch. 2019),
   *aff'd*, 237 A.3d 68 (Del. 2020) ............................................................... 12, 13

*Livnat v. Palestinian Auth.*,
   851 F.3d 45 (D.C. Cir. 2017) ........................................................................ 34

*McKesson Corp. v. Islamic Republic of Iran*,
   672 F.3d 1066 (D.C. Cir. 2012) ................................................................... 35

*Morton v. Mancari*,
   417 U.S. 535 (1974) ..................................................................................... 27

*Nemariam v. Fed. Democratic Republic of Ethiopia*,
   491 F.3d 470 (D.C. Cir. 2007) ..................................................................... 30

*Peterson v. Royal Kingdom of Saudi Arabia*,
   416 F.3d 83 (D.C. Cir. 2005) ................................................................. 19, 20

*Republic of Austria v. Altmann*,
   541 U.S. 677 (2004) ..................................................................................... 35

*Rusoro Mining Ltd. v. Bolivarian Republic of Venez.*,
   No. 18-7044, 2019 U.S. App. LEXIS 17543 (D.C. Cir. May 1, 2019) .................. 13

*Saudi Arabia v. Nelson*,
   507 U.S. 349 (1993) ..................................................................................... 19

*Seismic Reservoir 2020, Inc. v. Paulsson*,
   785 F.3d 330 (9th Cir. 2015) ....................................................................... 28

*Tennessee Coal, Iron & R. Co. v. George*,
   233 U.S. 354 (1914) ..................................................................................... 28

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
   30 F.3d 148 (D.C. Cir. 1994) ................................................................. 33, 34

*UAB Skyroad Leasing v. OJSC Tajik Air*,
   No. 21-7015, 2022 U.S. App. LEXIS 16977 (D.C. Cir. June 17, 2022) ................ 33

*United States v. Belmont*,
   301 U.S. 324 (1937) ..................................................................................... 13

*United States v. Pink*,
   315 U.S. 203 (1942) ..................................................................................... 13

*Von Saher v. Norton Simon Museum of Art*,
   897 F.3d 1141 (9th Cir. 2018) ..................................................................... 36

*W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp.*,
   493 U.S. 400 (1990) ..................................................................................... 35

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*,
   296 F.3d 1154 (D.C. Cir. 2002) ................................................................... 35

*Yang Rong v. Liaoning Provincial Gov't,*
  362 F. Supp. 2d 83 (D.D.C. 2005),
  *aff'd on other grounds*, 452 F.3d 883 (D.C. Cir. 2006)....................................................36, 37

**Statutes**

22 U.S.C. § 2370(e)(2)...................................................................................................36, 37

28 U.S.C. § 1330(a) ............................................................................................................19

28 U.S.C. § 1330(b) ............................................................................................................33

28 U.S.C. § 1603(b) ..............................................................................................................4

28 U.S.C. § 1604 .................................................................................................................19

28 U.S.C. § 1605(a)(3)..........................................................................................1, 20, 29, 30

FED. R. CIV. P. 12(b)(1)..........................................................................................................1

FED. R. CIV. P. 12(b)(2)..................................................................................................1, 3, 33

FED. R. CIV. P. 12(b)(6)..........................................................................................................1

**Other Authorities**

*Ahmadou Sadio Diallo (Guinea v. Dem. Rep. Congo),*
  2007 I.C.J. 582 (May 24) .................................................................................................26

*Case Concerning the Barcelona Traction, Light and Power Co., Ltd.,*
  1970 I.C.J. 3 (Feb. 5) ...................................................................................................24, 26

Código de Comercio [Commercial Code] art. 201(3) (Venez.),
  *translated in* Thomson Reuters,
  Checkpoint: RIA Worldwide Tax and Commercial Law ................................................25, 27

Código de Comercio [Commercial Code] art. 208 (Venez.),
  *translated in* Thomson Reuters, Checkpoint: RIA Worldwide Tax and Commercial Law ..... 25

Código de Comercio [Commercial Code] art. 280 (Venez.). .....................................................26

*Decree Having the Rank and Force of Law on
  Investment Promotion and Protection*,
  Decree No. 356 (Oct. 3, 1999), Official Gazette No. 5,390 (Oct. 22, 1999).........................28

Fletcher Cyclopedia of the Law of Corporations § 2949.21 (2013 rev. ed.) ...............................27

*Regulations of the Decree With the Rank and Force of Law
  to Promote and Protect Investments*,
  Decree No. 1,867 (July 11, 2002), Official Gazette No. 37,489 (July 22, 2002) ....................28

RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES (1987) § 444 ....... 37

Defendants Petróleos de Venezuela, S.A. ("PDVSA") and PDVSA Petróleo, S.A. ("Petróleo") (collectively, the "PDVSA Defendants") submit this memorandum of points and authorities in support of their motion to dismiss the remaining claim asserted by Plaintiff Helmerich & Payne International Drilling Co. ("Plaintiff" or "H&P-IDC") for lack of subject matter and personal jurisdiction under the Foreign Sovereign Immunities Act ("FSIA") and FED. R. CIV. P. 12(b)(1)-(2) and for failure to state a claim by application of the act of state doctrine under FED. R. CIV. P. 12(b)(6).

## PRELIMINARY STATEMENT

This case arises out of the nationalization of eleven oil rigs located in Venezuela and owned by Helmerich & Payne de Venezuela, C.A. ("H&P-V"), a Venezuelan corporation.  H&P-V, together with its parent company, Plaintiff H&P-IDC, commenced this litigation in 2011. H&P-V asserted breach of contract claims against Defendant Petróleo, and both H&P-V and H&P-IDC asserted claims for compensation against the PDVSA Defendants and the Bolivarian Republic of Venezuela (the "Republic") for the expropriation of H&P-V's oil rigs.  After more than a decade of litigation in this Court, the Court of Appeals for the D.C. Circuit, and the U.S. Supreme Court on certain threshold legal issues, only a sliver of the case remains.  All of H&P-V's claims have been dismissed for lack of subject matter jurisdiction under the FSIA.  In particular, the D.C. Circuit's most recent decision in this case held that the taking of H&P-V's assets fell within the domestic takings rule and therefore H&P-V could not establish a taking in violation of international law required to establish jurisdiction under the FSIA's expropriation exception, 28 U.S.C. § 1605(a)(3).  *Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, 743 F. App'x 442, 453 (D.C. Cir. 2018) ("*Helmerich IV*").  On remand, this Court also dismissed H&P-IDC's expropriation claim against the Republic for lack of subject matter jurisdiction under the FSIA.  H&P-IDC's claim against the PDVSA Defendants for

compensation for the taking of H&P-V's oil rigs is all that remains in this case. But that claim does not fall within the FSIA's expropriation exception either and therefore, like every other claim in this case, it must be dismissed for lack of subject matter jurisdiction.

To establish jurisdiction under the FSIA's expropriation exception, H&P-IDC needs to show (1) that its own direct rights in property were taken in violation of international law and (2) that such property "is owned or operated" by the PDVSA Defendants and that the PDVSA Defendants are engaged in commercial activity in the United States. H&P-IDC has failed to establish either element of the expropriation exception.

H&P-IDC has not identified any cognizable property right of its own that was taken in violation of international law. The D.C. Circuit has held that H&P-IDC cannot assert a claim based on the taking of H&P-V's oil rigs and, instead, must establish a "seizure of *its own* property." *Helmerich IV*, 743 F. App'x at 453 (emphasis original). H&P-IDC's principal theory is that the taking of H&P-V's oil rigs stripped H&P-IDC's shares of H&P-V of any significant value. But the D.C. Circuit held that the taking of a subsidiary's assets does not, as a matter of customary international law, constitute a taking of the shareholder's ownership interest simply because the loss of the subsidiary's assets significantly reduces the value of the subsidiary's shares. Rather, the D.C. Circuit held that H&P-IDC would need to establish that Defendants have "permanently take[n] over management and control of [H&P-V's] business," thereby leaving H&P-IDC "with shares that have been rendered useless." *Id.* at 454-55. The evidentiary record developed through discovery shows that H&P-IDC cannot meet this standard. H&P-IDC continues to exercise its shareholder rights by appointing H&P-V's officers and directors, holding shareholder meetings, voting its shares of H&P-V, declaring dividends and supervising the management of the company. In addition, following the expropriation of the oil rigs, H&P-V

continued to have employees and offices in Venezuela and retained lawyers and accountants. It continues to make tax and regulatory filings in Venezuela. It continues to enter into agreements in its own name. It is pursing legal actions and has recovered tens of millions of dollars on certain claims. Thus, the allegation in the Complaint that the entire company was taken and is being operated as a Venezuelan state-owned company is simply false.

Furthermore, H&P-V had tens of millions of dollars in assets that were not expropriated, including cash accounts, receivables, and insurance proceeds. In fact, based on Plaintiff's own financial documents, the value of H&P-V's shareholder equity, and thus the value of Plaintiff's shares of H&P-V, was in excess of $105 million after the taking of the oil rigs. Thus, the taking of H&P-V's oil rigs did not "completely destroy[] the beneficial and productive value" of H&P-IDC's shares of H&P-V. *Helmerich IV*, 743 F. App'x at 455.

H&P-IDC's alternative theory is that, as a shareholder, it had rights under Venezuelan law in H&P-V's property. No such rights exist. Venezuelan law provides that a shareholder has no rights in the assets of the company and thus is in accord with international law and the corporate law of virtually all modern legal systems. None of the laws cited by Plaintiff in the D.C. Circuit derogate from that universal corporate law principle.

H&P-IDC also cannot establish the jurisdictional nexus requirement of the FSIA's expropriation exception. Because none of H&P-IDC's own property was taken, it cannot show that the PDVSA Defendants "own[] or operate[]" any such property as required under the jurisdictional nexus prong of the FSIA's expropriation exception.

H&P-IDC's claim against the PDVSA Defendants must also be dismissed for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2). Even if there were a statutory basis for jurisdiction under the FSIA, the exercise of such jurisdiction over the PDVSA Defendants would

exceed the limits of due process.  The PDVSA Defendants are Venezuelan corporations and are therefore not subject to this Court's general jurisdiction.  Nor are they subject to specific personal jurisdiction because this case does not arise out of, or even relate to, any conduct by the PDVSA Defendants in the United States.  This case arises out of Venezuela's taking of oil rigs owned by a Venezuelan corporation, H&P-V, that are located in Venezuela.  The action has no connection to the United States, much less a connection that would support the exercise of personal jurisdiction over the PDVSA Defendants.

Finally, this case must be dismissed under the act of state doctrine.  That doctrine precludes courts of the United States from inquiring into the validity of the sovereign acts of a foreign state committed within its own territory.  Expropriation of property within the state has long been recognized as a quintessential sovereign act and a classic act of state.  The act of state doctrine therefore bars adjudication of the merits of H&P-IDC's expropriation claim.

## BACKGROUND

### A.      The Parties

Defendant PDVSA is a Venezuelan corporation that is wholly owned by the Republic. Defendant Petróleo is a Venezuelan corporation and a wholly-owned subsidiary of PDVSA. Compl. ¶¶ 12, 13.  It is undisputed that the PDVSA Defendants each qualify as an "agency or instrumentality" of the Republic under the FSIA, 28 U.S.C. § 1603(b).  Compl. ¶¶ 12, 13.

Plaintiff H&P-IDC is a Delaware corporation with its principal office in Oklahoma. Compl. ¶ 9.  H&P-IDC has never conducted any operations in Venezuela.  H&P-IDC owns 100% of the shares of H&P-V, a Venezuelan company that provided oil and gas drilling services in Venezuela.  H&P-V owned eleven oil drilling rigs that it used to provide those drilling services.  In June 2010, those eleven oil rigs and property associated with the use of those oil rigs were nationalized.  Dkt. No. 22-4.

**B.     Procedural History**

In September 2011, H&P-IDC and H&P-V commenced this action against the Republic and the PDVSA Defendants.  Both H&P-IDC and H&P-V asserted claims for compensation against the Republic and the PDVSA Defendants for the taking of H&P-V's oil rigs.  Compl. ¶¶ 172-181; Dkt. No. 22-4.[1]  H&P-V asserted claims against Petróleo for breach of drilling contracts that those parties entered into in 2007 based on allegations that Petróleo failed to make payments to H&P-V under those contracts.  Compl. ¶¶ 30-34, 182-281.  H&P-IDC was not a party to those drilling contracts and therefore did not assert any claims for breach of those contracts or otherwise allege any rights to H&P-V's receivables under those contracts.

The Republic and the PDVSA Defendants separately moved to dismiss, Dkt. Nos. 22, 24, (the "Original Motions").  Both Defendants moved to dismiss for lack of subject matter jurisdiction under the FSIA.  The PDVSA Defendants also moved to dismiss on additional grounds, including lack of personal jurisdiction, the act of state doctrine, and H&P-IDC's lack of standing to bring any of the claims asserted in the Complaint.  Dkt. No. 22.  The parties stipulated to resolving several threshold legal issues before litigating the remaining issues presented in the Original Motions:

> (1) Whether, for purposes of determining if a "taking in violation of international law" has occurred under the FSIA's expropriation exception, H&P-Venezuela is a national of Venezuela under international law;

---

[1] The expropriation was effected through an *Acuerdo* (bill of agreement) published by the Venezuelan National Assembly on June 29, 2010, and a decree issued by the Venezuelan National Executive on June 30, 2010 (the "Expropriation Decree").  Dkt. No. 22-4.  Both the *Acuerdo* and the Expropriation Decree declare the taking of eleven oil rigs owned by H&P-V and property associated with the use of those oil rigs.  *Id.*  Neither the *Acuerdo* nor Expropriation Decree ordered, or resulted in, the taking of any property owned by H&P-IDC.

(2) Whether H&P-IDC has standing to assert a taking in violation of international law on the basis of Venezuela's expropriation of H&P-Venezuela's property;

(3) Whether plaintiffs' expropriation claims are barred by the act-of-state doctrine, including whether this defense may be adjudicated prior to resolution of Venezuela's challenges to the court's subject matter jurisdiction; and

(4) Whether, for purposes of determining the applicability of the FSIA's commercial activity exception, plaintiffs have sufficiently alleged a "direct effect" in the United States within the meaning of that provision.

Dkt. No. 36.  Pursuant to the stipulation, the parties deferred litigation of all other issues raised in the Original Motions, including the jurisdictional nexus requirement under the FSIA's expropriation exception to immunity and the PDVSA Defendants' personal jurisdiction defense.

1.      All of H&P-V's Claims Were Dismissed for Lack of Subject Matter Jurisdiction under the FSIA

On September 20, 2013, this Court entered a decision granting the Original Motions to dismiss in part and denying them in part.  *Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venez.*, 971 F. Supp. 2d 49 (D.D.C. 2013) ("*Helmerich I*").  This Court held that H&P-V was a Venezuelan national and therefore the Republic's taking of H&P-V's assets did not constitute a violation of international law under the well-establish domestic takings rule.  *Id.* at 56, 61.  This Court declined, however, to dismiss H&P-IDC's expropriation claim.  *Id.* at 73.  This Court also held that H&P-V had adequately alleged subject matter jurisdiction over its contract claims under the FSIA's commercial activity exception.  *Id.* at 68.  Finally, this Court declined to consider whether the act of state doctrine applied on the ground that this doctrine "goes to the merits, and is not a jurisdictional defense." *Id.* at 63-64.  The parties appealed.

On May 1, 2015, the D.C. Circuit reversed in part and affirmed in part.  *Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venez.*, 784 F.3d 804 (D.C. Cir. 2015)

("*Helmerich II*").  It unanimously held that the FSIA's commercial activity exception did not

apply to H&P-V's contract claims and thus reversed the denial of the PDVSA Defendants'

motion to dismiss those claims.  *Id.* at 817-19.  The panel was split, however, on the application

of the FSIA's expropriation exception.  A majority of the panel held that a plaintiff need only

allege a taking in violation of international law that is not "wholly insubstantial or frivolous" to

plead jurisdiction under the FSIA's expropriation exception.  *Id.* at 812.  The majority then found

that H&P-V met that standard by alleging a nonfrivolous discriminatory takings claim.  *Id.* at

813-14.  The majority further held that H&P-IDC had made a non-frivolous allegation that it had

rights in H&P-V's property that were taken in violation of international law.  *Id.* at 815-16.

While Judge Sentelle concurred in the dismissal of H&P-V's contract claims, he dissented with

respect to the majority's application of the FSIA's expropriation exception.[2]

        The Republic and the PDVSA Defendants filed petitions for writs of certiorari in the

Supreme Court to review certain questions pertaining to the application of the FSIA's

expropriation exception, including whether the D.C. Circuit applied the proper pleading standard

in *Helmerich II*.  H&P-V cross-petitioned, asking the Supreme Court to review whether its

contract claims fell within the FSIA's commercial-activities exception.  While the Supreme

Court petitions were pending, the case was remanded back to this Court to address the remaining

issues raised in the Original Motions.

---

[2] Judge Sentelle would have dismissed both plaintiffs' expropriation claims for lack of
jurisdiction.  *Id.* at 819.  Judge Sentelle agreed with this Court's application of the domestic
takings rule and would have affirmed dismissal of H&P-V's expropriation claims for lack of
jurisdiction under the FSIA.  *Id.* at 819-20.  Judge Sentelle also disagreed with H&P-IDC's
arguments that it had standing as a shareholder to assert an expropriation claim based on the
taking of H&P-V's assets and would have dismissed those claims as well for lack of jurisdiction
under the FSIA.  *Id.* at 820-21.

On October 2, 2015, this Court entered an order concluding that H&P-IDC and H&P-V should be permitted to move forward with taking jurisdictional discovery from the PDVSA Defendants.  Dkt. No. 73.  In a subsequent order entered on October 19, 2015, the Court stated that the "jurisdictional discovery shall be limited to the issue of whether the expropriated 'property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in commercial activity in the United States.'"  Dkt. No. 77 (quoting 28 U.S.C. § 1605(a)(3)).  Thereafter, the PDVSA Defendants produced 315 documents, consisting of 12,559 pages and provided responses to the plaintiffs' interrogatories.  Meehan Decl. at ¶ 3.[3]  On March 23 and 24, 2016, the PDVSA Defendants' witness, Josaim Trujillo Acosta, was deposed.  *Id.* at ¶ 4.  On May 13, 2016, this Court entered an order compelling further discovery from the PDVSA Defendants. Dkt. No. 114.

On June 28, 2016,  the Supreme Court granted certiorari to review the D.C. Circuit's "wholly insubstantial or frivolous" pleading standard.  136 S. Ct. 2539 (2016).  The Supreme Court, however, denied H&P-V's petition for certiorari to review the dismissal of its contract claims.  137 S. Ct. 2114 (2017).[4]  Upon granting of the Defendants' petition, this Court stayed the ongoing proceedings pending the Supreme Court's decision on the proper pleading standard. Dkt. No. 124.

On May 1, 2017, the Supreme Court issued its decision vacating the D.C. Circuit's application of the FSIA's expropriation exception.  *Bolivarian Republic of Venezuela* v. *Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1316, 1323 (2017) ("*Helmerich III*").

---

[3] As used herein, "Meehan Decl." refers to the Declaration of Kevin Meehan, dated October 10, 2023, filed in support of the PDVSA Defendants' present motion to dismiss.

[4] The dismissal of H&P-V's contract claims are now final and unappealable.

The Court explained that "a party's nonfrivolous, but ultimately incorrect, argument that property was taken in violation of international law is insufficient to confer jurisdiction" over a foreign sovereign under the FSIA. *Id.* at 1316. Rather, to plead jurisdiction under the FSIA's expropriation exception, a plaintiff "must make out a legally valid claim that a certain kind of right is at issue (*property* rights) and that the relevant property was taken in a certain way (in violation of international law)." *Id.* (emphasis original). The Supreme Court explained that factual disputes may need to be resolved to answer this jurisdictional question and that, "consistent with foreign sovereign immunity's basic objective, namely, to free a foreign sovereign from *suit*, the court should normally resolve those factual disputes and reach a decision about immunity as near to the outset of the case as is reasonably possible." *Id.* at 1317 (emphasis original). The Supreme Court then remanded the case to the D.C. Circuit to evaluate Plaintiffs' claims under the appropriate pleading standard.

On August 7, 2018, the D.C. Circuit issued a decision dismissing H&P-V's expropriation claim on the grounds that H&P-V's property was not taken in violation of international law. *Helmerich IV*, 743 F. App'x at 453. The D.C. Circuit held that H&P-V was a Venezuelan corporation and therefore the taking of H&P-V's assets fell within the domestic takings rule, which holds that a State's taking of property of its own nationals does not constitute a violation of international law. *Id.* at 447-48. The D.C. Circuit then turned to H&P-IDC's claim that it had its own property rights, apart from H&P-V's rights in the drilling rigs, which had been taken in violation of international law. Because "the domestic-takings rule bars H&P-IDC from basing an expropriation claim on Venezuela's seizure of H&P-V's property," the D.C. Circuit held that H&P-IDC was required to plead a claim based on a "seizure of *its own* property." *Id.* at 453 (emphasis original). H&P-IDC identified two alleged property rights that it claims were taken:

First, H&P-IDC alleged that Defendants "unlawfully seized its ownership interest in its subsidiary, H&P-V." *Id.*  Second, H&P-IDC alleged that Defendants "unlawfully seized its allegedly direct right under Venezuela law to exercise some degree of control over H&P-V's expropriated assets." *Id.*

With respect to H&P-IDC's first theory, the D.C. Circuit held that the complaint was sufficient to withstand a facial challenge to subject matter jurisdiction because it adequately alleges that Defendants have "permanently take[n] control over management and control of [H&P-V's] business, completely destroying the beneficial and productive value of [H&P-IDC's] ownership of [its] company, and leaving [H&P-IDC] with shares that have been rendered useless." *Id.* at 455.  In particular, the D.C. Circuit found that the Complaint alleged not only that H&P-V had been stripped of all of its assets but that Venezuela had "dismantl[ed] [H&P-IDC's] voting power, destroy[ed] its ownership, and frustrat[ed] its control over the company" that was "now operate[d] as a state-owned commercial enterprise." *Id.* at 445, 455.  The D.C. Circuit nevertheless found that there remained a factual issue as to whether H&P-IDC could prove those jurisdictional allegations.  *Id.* at 455.  It explained that evidence concerning the appointment of H&P-V's directors as well as H&P-V's pursuit of litigation and its recovery on claims, among other things, would be relevant to resolving "the district court's ultimate 'fact intensive, case-by-case inquiry' into whether Venezuela and PDVSA have in fact committed the act of which they stand accused, namely the wholesale nationalization of H&P-V." *Id.*  The D.C. Circuit remanded the case back to the district court to engage in that factual inquiry on a more developed evidentiary record.  *Id.*

The D.C. Circuit declined to address H&P-IDC's theory that it had direct rights in H&P-V's assets under Venezuelan law that were taken in violation of international law.  It stated that

this theory "raises difficult questions about the scope of a parent company's rights in its subsidiary's assets under Venezuelan law and about the extent to which international law protects those rights, whatever they might be." *Id.* at 456.  The D.C. Circuit explained that these issues should be addressed in the first instance by this Court on remand together with H&P-IDC's primary theory that the entire company was expropriated.  *Id.*

Judge Sentelle wrote a separate opinion concurring in the dismissal of H&P-V's claims and expressing "misgivings" about the panel's decision not to dismiss the entire case.  *Id.* at 457.  Judge Sentelle reiterated his view expressed in his dissenting opinion in *Helmerich II* that H&P-IDC's claim should be dismissed for lack of subject matter jurisdiction under the FSIA.  *Id.*  Nevertheless, given the panel's decision to remand the case for further analysis of the jurisdictional issues, Judge Sentelle reluctantly concurred in the panel's decision not to dismiss H&P-IDC's claims outright.  *Id.*

Following the D.C. Circuit's decision in *Helmerich IV*, all of H&P-V's claims were dismissed, and only H&P-IDC's expropriation claims remained.

>     2.     This Court Ordered Plaintiff and the PDVSA Defendants to Provide
>            Discovery on the Remaining Jurisdictional Issues

Upon remand from the D.C. Circuit, this Court entered an order, on January 10, 2019, setting out the next steps for the proceedings.  Dkt. No. 131.  The Court formally dismissed H&P-V pursuant to *Helmerich IV*.  *Id.* at 5.  The Court also ordered the parties to resume discovery and directed the PDVSA Defendants to complete its responses to the Plaintiff's discovery requests in accordance with the Court's prior May 2016 discovery order.  *Id.*  The order further set a schedule for completing discovery and briefing motions to dismiss on the remaining jurisdictional issues under the FSIA's expropriation exception.  *Id.* at 4-6.

The Court's order also granted the PDVSA Defendants' request to take discovery from Plaintiff on the remaining factual issues to be resolved on their jurisdictional defense under the FSIA's expropriation exception. *Id.* at 4. The Court explained that the PDVSA Defendants intended to assert a factual challenge to H&P-IDC's theory that its entire ownership interest in H&P-V had been taken and that the D.C. Circuit's decision in *Helmerich IV* acknowledged that the PDVSA Defendants had raised certain factual issues that would be relevant to determining whether H&P-IDC still controls H&P-V and whether H&P-IDC's shares of H&P-V have any value. *Id.* at 3. The Court further stated that ordering Plaintiff to provide such discovery "reflects the importance of allowing PDVSA to make potentially dispositive arguments as quickly as practicable." *Id.* at 4.

### 3. The Court Granted Plaintiff's Motion to Stay the Proceedings in View of the Political Situation in Venezuela

On January 10, 2019, the same day the Court entered its scheduling order, Venezuela's freely and fairly elected National Assembly declared the results of the 2018 presidential election, purporting to re-elect former Venezuelan president Nicolás Maduro, invalid and named Juan Guaidó as Interim President of Venezuela pursuant to Article 233 of the Venezuelan Constitution. *See Jiménez v. Palacios*, 250 A.3d 814, 821 (Del. Ch. 2019), *aff'd* 237 A.3d 68 (Del. 2020). On January 23, 2019, the U.S. Executive officially recognized Mr. Guaidó as Interim President of Venezuela. *Id.* at 822. The U.S. Executive further made clear its official nonrecognition of the Maduro regime, stating: "The United States does not recognize the Maduro regime as the government of Venezuela" and "does not consider former president Nicolas Maduro to have the legal authority" to act on behalf of the Republic.[5] Thereafter, the Interim

---

[5] Statement by U.S. Secretary of State Michael Pompeo, dated January 23, 2019, *available at* https://br.usembassy.gov/continuing-u-s-diplomatic-presence-in-venezuela/.

Government exercised its rights as PDVSA's shareholder to appoint an *ad hoc* Board of

Directors of PDVSA.  *See Jiménez,* 250 A.3d at 824-25.  On January 28, 2019, the U.S. Treasury

Department's Office of Foreign Asset Control ("OFAC") imposed economic sanctions on

PDVSA and its affiliates.

On February 14, 2019, H&P-IDC moved to stay the proceedings in view of these

developments.  H&P-IDC stated that the Executive's decision to recognize the Interim

Government and derecognize the Maduro regime was binding on U.S. courts.  Dkt. No. 132 at 3

(citing *Guar. Tr. Co. of New York v. United States*, 304 U.S. 126, 138 (1938)).  H&P-IDC further

recognized that the imposition of OFAC sanctions on PDVSA "prohibits U.S. persons from

providing services to or engaging in transactions with PDVSA."  Dkt. No. 132 at 2-3.  H&P-IDC

also stated that a stay was appropriate because the Defendants were not able to participate in

discovery in view of the political situation in Venezuela.  *Id.* at 3-4.  This Court granted the stay

on February 15, 2019.  Dkt. No. 133.  For several years, H&P-IDC took the position that the case

should remain stayed in view of the fact that the illegitimate Maduro regime continued to control

PDVSA's assets and operations in Venezuela and therefore Defendants could not provide

discovery of any information located in Venezuela.  *See, e.g.,* Dkt. No. 135.[6]

4.    The Court Grants Plaintiff's Request to Lift the Stay and
Orders the Parties to Litigate All Remaining Threshold Issues

On April 14, 2022, this Court granted Plaintiff's request to lift the stay.  Dkt. No. 145.

Although Plaintiff had repeatedly acknowledged that the PDVSA Defendants could not provide

discovery of any relevant information in view of the political crisis in Venezuela, the Court held

---

[6] The Executive's decision to recognize the Interim Government and derecognize the Maduro
regime is binding on U.S. courts.  *See Rusoro Mining Ltd. v. Bolivarian Republic of Venez.*, No.
18-7044, 2019 U.S. App. LEXIS 17543, at *1-2 (D.C. Cir. May 1, 2019); *see also United States
v. Pink*, 315 U.S. 203, 229 (1942); *United States v. Belmont*, 301 U.S. 324, 328-30 (1937).

that there were certain issues that could be litigated without such discovery.  Among other things, the Court found that the parties could litigate the issue of whether H&P-IDC could establish that its own rights in property were taken in violation of international law under *Helmerich IV* because the only discovery needed to adjudicate that issue would come from Plaintiff – not the PDVSA Defendants.  *Id.* at 4.  The Court explained that moving forward on that issue made sense because the PDVSA Defendants' arguments, if successful, would be dispositive of the case.  *Id.*  The Court therefore ordered Plaintiff to provide discovery consistent with the Court's prior January 2019 order.  *Id.* at 6.

By contrast, the Court recognized that it could be difficult for the case to move forward on the issue of whether Plaintiff can satisfy the "commercial-nexus requirement" of the FSIA's expropriation exception without discovery, but it observed that "there may be some narrow paths forward on two aspects of this issue."  *Id.* at 2.  First, the Court ordered PDVSA to certify that it had no information responsive to Plaintiff's discovery requests on this issue.  *Id.*  Second, the Court left open the possibility of deposing a representative of the PDVSA *ad hoc* Board.  *Id.* at 3.

On May 27, 2022, PDVSA provided Plaintiff with a declaration from PDVSA *ad hoc* Board member Julian Cardenas Garcia certifying that PDVSA did not have any information responsive to Plaintiff's discovery requests in its possession, custody, or control.  Dkt. No. 149, Ex. A.  PDVSA further submitted a declaration from counsel stating that all non-privileged documents responsive to Plaintiff's discovery requests in counsel's possession, custody, or control had been produced.  *Id.*, Ex. B.  Despite these certifications, Plaintiff deposed Mr. Cardenas as a corporate representative of PDVSA pursuant to Federal Rule of Civil Procedure 30(b)(6).  Meehan Decl. at ¶ 5.

Plaintiff provided responses to the PDVSA Defendants' written discovery requests. Plaintiff also began producing documents on a rolling basis on October 5, 2022.  Over the course of several months, Plaintiff produced 23,200 documents totaling 146,196 pages.  Meehan Decl. at ¶ 6.  Plaintiff's production largely consisted of Spanish language documents and most documents were from the period following the taking of H&P-V's oil rigs in 2010.  Plaintiff's Rule 30(b)(6) witness, Stuart Spencer, was deposed on July 14, 2023.  Meehan Decl. at ¶ 7.

5.     The Republic Is Dismissed for Lack of
          Subject Matter Jurisdiction under the FSIA

Meanwhile, in accordance with the Court's April 2022 order, the Republic file a renewed motion to dismiss on June 1, 2022.  Dkt. No. 148.  The Republic's motion sought dismissal for lack of subject matter jurisdiction on the grounds that Plaintiff cannot establish the requisite jurisdictional nexus with the United States under the FSIA's expropriation exception.  *Id.*  This Court agreed and entered an order dismissing the Republic on January 31, 2023.  *Helmerich Int'l Drilling Co. v. Bolivarian Republic of Venez.*, No. 11-cv-01735 (CRC), 2023 U.S. Dist. LEXIS 15576, at *4 (D.D.C. Jan. 31, 2023) ("*Helmerich V*").  The Court held that, under binding D.C. Circuit precedent, the Republic – as the government itself – could only be subject to jurisdiction under the FSIA's expropriation exception if the expropriated property or any property exchanged for it is located in the United States.  *Id.* at *3.  Thus, it held that the expropriation exception did not apply because it was undisputed that no such property was located in United States.  Plaintiff did not appeal this decision.

C.     **The Facts Relevant to This Motion**

The only remaining claim in this case is H&P-IDC's expropriation claim against the PDVSA Defendants, and the only factual issue relevant to this motion is whether H&P-IDC has proven that the PDVSA Defendants "permanently [took] over management and control of [H&P-

V's] business, completely destroying the beneficial and productive value of [H&P-IDC's] ownership of their company, and leaving the shareholder with shares that have been rendered useless." *Helmerich IV*, 743 F. App'x at 455.  The discovery that the PDVSA Defendants have obtained from H&P-IDC on this issue demonstrates that the H&P-V shares still had considerable value after the taking of H&P-V's oil rigs, that H&P-V continues to be an active corporation, and that H&P-IDC continues to own and exercise its rights in the H&P-V shares.

Even after H&P-V's oil rigs were taken in June 2010, the shares of H&P-V continued to be worth tens of millions of dollars.  Indeed, H&P-IDC filed federal tax forms with the IRS in 2011 stating that its total shareholder equity in the H&P-V shares exceeded $105 million based on H&P-V ownership of an equivalent value of assets.  Meehan Decl., Ex. 10 at 3.  Plaintiff asserted in its discovery responses that H&P-V's oil rigs had a book value of approximately $158 million in 2009.  Meehan Decl., Ex. 1 at No. 18.  Thus, even after the taking of its oil rigs, H&P-V retained approximately 40% of its share value.

H&P-IDC admits in its discovery responses that H&P-V's bank accounts in the U.S. and Venezuela were not taken.  Meehan Decl., Ex. 2 at No. 5-6, Ex. 1 at No. 5, Ex. 3 at No. 11. Plaintiff's financial disclosures report that H&P-V continued to have over $30 million in cash.[7] Meehan Decl., Ex. 10 at 3, Ex. 7 at 55.  Plaintiff further states that, after the oil rigs were taken, H&P-V held an account receivable from H&P-IDC worth roughly $12 million.  Meehan Decl., Ex. 3 at No. 11; *see also infra* at pp. 18, 24.  Plaintiff's federal tax forms state that H&P-V recorded loans to shareholders and affiliated persons as assets worth in excess $6.5 million.

---

[7] Plaintiff complains that Venezuela's foreign exchange control regulations have prevented H&P-V from converting the Bolivars in its Venezuelan accounts into U.S. dollars and transferring such funds to H&P-IDC's U.S. accounts.  Meehan Decl., Ex. 1 at No. 5, Ex. 7 at 55. However, those foreign exchange controls were in place when H&P-V entered into the drilling contracts with Petróleo and agreed to be paid in Bolivars.  *See Helmerich I* at 66.

Meehan Decl., Ex. 10 at 3.  Plaintiff's financial disclosures further state that H&P-V recorded total income of more than $22.5 million from 2012 to 2013.  Meehan Decl., Ex. 8 at 28-29, Ex. 11 at 2, Ex. 12 at 2.  H&P-V further obtained internal and external assessments that it remained solvent and not at risk of bankruptcy in the years after the taking of its rigs.  Meehan Decl., Ex. 19, Ex. 13.

H&P-V continued to engage in various activities after the taking of its oil rigs.  *See* Meehan Decl., Ex. 2 at No. 1, Ex. 7 at 55.  H&P-V continues to make required tax and regulatory filings in Venezuela.  *See* Meehan Decl., Ex. 7 at 55, Ex. 2 at No. 1, 8, Ex. 14.  H&P-V has also pursued various legal claims.  Indeed, H&P-V was a plaintiff in this very litigation and prosecuted this case for years.  In particular, H&P-V brought breach of contract claims against Petróleo – claims that belong to H&P-V alone and thus were not asserted by H&P-IDC.  Compl. ¶¶ 182-281.  H&P-V appeared through counsel and participated in the expropriation proceedings in Venezuela that were initiated pursuant to the Expropriation Decree.  Compl. ¶ 73; Meehan Decl., Ex. 1 at Nos. 8-9, 12.  H&P-V has also pursued legal actions against third-parties and entered into settlement agreements.  *See* Meehan Decl., Ex. 1 at Nos. 8-9,  Ex. 8 at 23, Ex. 2 at No. 1.  In fact, H&P-V successfully recovered over $22.5 million on insurance claims relating to the taking of the oil rigs.  Meehan Decl., Ex. 8 at 23, 27-29, Ex. 11 at 2, Ex. 12 at 2.

H&P-V continued to incur expenses in connection with its post-expropriation activities.  H&P-V was paying rent on an office it maintains in Venezuela as well as a residential lease for a house in Venezuela.  Meehan Decl., Ex. 16, Ex. 15.  H&P-V was paying for Venezuelan lawyers and accountants.  Meehan Decl., Ex. 17, Ex. 20, Ex. 9.  H&P-V also had employees that its continued to pay and provide benefits.  Meehan Decl., Ex. 18, Ex. 2 at No. 8.

H&P-IDC also continues to own the H&P-V shares and actively exercises its rights as a shareholder.  The federal tax forms that H&P-IDC submitted to the IRS state that it continues to own all of the shares of H&P-V.  Meehan Decl., Ex. 10, Ex. 11, Ex. 12.  H&P-IDC continues to appoint H&P-V's directors and officers.  Meehan Decl., Ex. 2 at Nos. 1, 8, Ex. 4 at No.18.  H&P-IDC has held shareholder meetings and authorized designated representatives in Venezuela to act as H&P-IDC's proxy to exercise its rights as H&P-V's shareholder.  *See e.g.* Meehan Decl., Ex. 21.  Those Venezuelan proxies have exercised H&P-IDC's right to vote its shares of H&P-V as instructed by H&P-IDC, held shareholder meetings and prepared shareholder meeting minutes.  Meehan Decl., Ex. 2 at No. 1.

H&P-IDC has also exercised its rights as a shareholder to authorize and receive dividends and distributions.  Meehan Decl., Ex. 3 at No. 11.  For example, Petróleo made payments totaling roughly $65 million into H&P-V's U.S. bank accounts for services rendered by H&P-V under the parties' drilling contracts.  Compl. ¶ 44.  Plaintiff explains that, after the payments from Petróleo were received and deposited in H&P-V's U.S. bank accounts, the funds were transferred to H&P-IDC's bank account.  Meehan Decl., Ex. 3 at No. 11.  Observing corporate formalities and the distinction between the separate corporations and their assets, H&P-IDC states that H&P-V recorded those transfers of its funds as an account receivable from H&P-IDC on its balance sheet.  *Id.*  At the time of the expropriation, H&P-V valued the account receivable from H&P-IDC as an asset worth roughly $12 million.  *Id.*  H&P-IDC allegedly made payments to cover certain of H&P-V's expenses and offset those payments against the account receivable owed to H&P-V.  *Id.*  In September 2020, "H&P-IDC, in its capacity as sole shareholder of H&P-V, authorized the reclassification of the outstanding $11,173,194.18 account receivable owed to H&P-V a 'deemed dividend.'"  *Id.*  Similarly, H&P-V received over $22.5 million in

insurance settlements on claims relating to the taking of its oil rigs and reported those proceeds as received income in 2012 and 2013.  Meehan Decl., Ex. 8 at 23, 27-29, Ex. 11, Ex. 12.  H&P-IDC asserts in its discovery responses that it was the ultimate beneficiary of those proceeds.  Meehan Decl., Ex. 1 at No. 5.

H&P-IDC also admits that it has continued to direct and control H&P-V with respect to its post-expropriation activities.  Ex. 2 at No. 1.  H&P-IDC explains that it made an intentional decision not to dissolve H&P-V and took steps to ensure that its subsidiary complies with its obligations under Venezuelan law and remains in good standing.  *See* Meehan Decl.,  Ex. 2 at Nos. 1, 8; *see also* Ex. 7 at 55.

## ARGUMENT

## I.     This Case Must Be Dismissed for Lack of
## Subject Matter Jurisdiction under the FSIA

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country."  *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989).  The statutory grant of jurisdiction "it is not a particularly generous one."  *Peterson v. Royal Kingdom of Saudi Arabia*, 416 F.3d 83, 86 (D.C. Cir. 2005).  Foreign states and their agencies and instrumentalities are presumptively immune from the jurisdiction of U.S. courts, and that presumption can be overcome only where the plaintiff establishes the substantive requirements for abrogating foreign sovereign immunity set forth in the FSIA.  *See* 28 U.S.C. § 1604; *Helmerich III,* 137 S. Ct. at 1316, 1324; *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).  Satisfying those substantive requirements is a prerequisite to the exercise of subject matter jurisdiction under 28 U.S.C. § 1330(a).  Thus, where no exception to immunity applies, the case must be dismissed for lack of subject matter jurisdiction.  *See Peterson*, 416 F.3d at 86.

Here, it is undisputed that the PDVSA Defendants qualify as agencies or instrumentalities of a foreign state under the FSIA and are therefore presumptively immune from suit.  *See Helmerich IV*, 743 F. App'x at 445;  *Helmerich I*, 971 F. Supp. 2d at 53-54.  Plaintiff invokes the FSIA's expropriation exception, which abrogates an agency or instrumentality's immunity in cases:

> in which rights in property taken in violation of international law are in issue and … that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States[.]

28 U.S.C. § 1605(a)(3).  *See also De Csepel v. Republic of Hungary*, 859 F.3d 1094, 1104-08 (D.C. Cir. 2017).  Thus, to satisfy the expropriation exception, Plaintiff must demonstrate (i) a taking of its property in violation of international law and (ii) a jurisdictional nexus to the United States.  *See Peterson*, 416 F.3d at 86-87.  Plaintiff cannot establish either of these elements.

### A.    Plaintiff Failed to Prove a Taking of Its Rights in Property in Violation of International Law

H&P-IDC must demonstrate that "*its own* property," not merely the property of its subsidiary, was taken in violation of international law.  *Helmerich IV*, 743 Fed. Appx. at 453 (emphasis original).  The D.C. Circuit explained that the taking of H&P-V's property fell within the domestic takings rule and therefore did not violate international law.  *Id.* at 447-48.  It further held that, because the taking of the property owned by H&P-V did not violate international law, H&P-IDC could not assert a taking in violation of international law based on the taking of H&P-V's property.  *Id.* at 453.  Rather, in order to satisfy the FSIA's expropriation exception, the D.C. Circuit held that H&P-IDC would need to show that "*its own* property" was taken in violation of international law.  *Id.*  H&P-IDC advances two theories by which it alleges its own property was taken.  First, H&P-IDC alleges that the taking of H&P'V's oil rigs amounted to a taking of H&P-

IDC's ownership interest in the shares of H&P-V.  *Id.*  Second, H&P-IDC alleges that it had direct rights under Venezuelan law to use and control H&P-V's oil rigs and that those rights were taken.  *Id.*  Both theories are unavailing and must be rejected.

        1.      H&P-IDC Continues to Exercise Its Shareholder
                   Rights by Managing and Controlling H&P-V

The D.C. Circuit held that international law protects a shareholder's "direct rights" in corporate ownership, including "the right to any declared dividend, the right to attend and vote at general meetings, [and] the right to share in the residual assets of the company on liquidation." *Helmerich IV*, 743 F. App'x at 454.  "[A] shareholder's direct rights generally are not implicated by state action that depreciates the value of a corporation's shares, even severely." *Id.* (quoting U.S. amicus brief).  Rather, the D.C. Circuit held that a taking of the shareholder's direct ownership rights in the subsidiary occurs "[w]hen a state permanently takes over management and control of [a foreign shareholder's] business, completely destroying the beneficial and productive value of the shareholder's ownership of their company, and leaving the shareholder with shares that have been rendered useless." *Id.*

The D.C. Circuit set a high bar.  Indeed, every case applying *Helmerich IV* has held that the plaintiff shareholder failed to demonstrate a taking of its direct rights in the company based on the expropriation of the company's assets.  *See Bock Holdings, LLC v. Republic of Honduras*, No. 21-81781-CIV-SINGHAL, 2023 U.S. Dist. LEXIS 25354, at *7 (S.D. Fla. Jan. 31, 2023); *Exxon Mobil Corp. v. Corporación CIMEX S.A.*, 534 F. Supp. 3d 1, 27-28 (D.D.C. 2021); *Afr. Growth Corp. v. Republic of Anglola*, Civ. No. 17-2469 (BAH), 2019 U.S. Dist. LEXIS 120571, at *20 (D.D.C. July 19, 2019).  Plaintiff likewise cannot satisfy any aspect of the *Helmerich IV* standard.

The D.C. Circuit found that H&P-IDC had sufficiently pleaded that the "management and control of [H&P-V's] business" had been "permanently take[n] over." 743 F. App'x at 455. That Court recognized that there were factual issues concerning, among other things, the appointment of H&P-V's officers and directors, H&P-V's pursuit of legal claims and its collection of millions of dollars after the 2010 expropriation of the oil rigs. *Id.* The D.C. Circuit remanded the case for further development of the evidentiary record and a "fact intensive" inquiry on this issue. *Id.* With the benefit of discovery ordered by this Court, it is clear that Plaintiff's allegations are false.

H&P-IDC admits in its discovery responses that it continues to exercise its shareholder rights to direct and control H&P-V's management and activities. Meehan Decl., Ex. 2 at No. 1. H&P-IDC admittedly continues to appoint H&P-V's officers and directors. Meehan Decl., Ex. 2 at Nos. 1, 8, Ex. 4 at No. 18. H&P-IDC also states that it has been involved in directing and supervising H&P-V's various legal actions. Ex. 2 at No. 1. The evidence shows that since the taking of its oil rigs H&P-V successfully recovered millions of dollars from third parties, and H&P-IDC was the beneficiary of those recoveries. Meehan Decl., Ex. 8 at 23, 27, Ex. 1 at No. 5. As the D.C. Circuit itself recognized, such evidence shows that H&P-IDC retained its shareholder control over H&P-V. *See Helmerich IV*, 743 F. App'x at 455. Thus, for this reason alone, H&P-IDC cannot establish a taking of its ownership interest in H&P-V.

H&P-IDC also cannot establish a taking of its shares of H&P-V because it cannot prove that those "shares … have been rendered useless" as required under *Helmerich IV*, 743 F. App'x at 454. Discovery has now revealed that Plaintiff's allegations in this regard are false.

The evidence shows that H&P-IDC has repeatedly exercised its shareholder rights including its right to vote the H&P-V shares. In fact, Plaintiff admits in its discovery responses

that, as recently as September 2020, "H&P-IDC, in its capacity as sole shareholder of H&P-V" voted to authorize a dividend.  Meehan Decl., Ex. 3 at No. 11.  H&P-IDC has also appointed proxies in Venezuela and instructed them to exercise H&P-IDC's rights to vote the H&P-V shares.  Meehan Decl., Ex. 2 at No. 1, Ex. 22.  H&P-IDC and its proxies have held H&P-V shareholders meetings.  Meehan Decl., Ex. 2 at No. 1, Ex. 3 at No. 11.  H&P-IDC continues to exercise the quintessential shareholder right of appointing H&P-V's directors.  Meehan Decl., Ex. 2 at Nos. 1, 8, Ex. 4 at No. 18.  Accordingly, the evidence proves that the taking of H&P-V's oil rigs did not render the H&P-V shares useless.  *See Exxon Mobil*, 534 F. Supp. 3d at 28 (holding that the taking of a company's assets did not amount to a taking of the shareholder's ownership interests in the company under *Helmerich IV* where the shareholder continued to hold shareholder meetings and its appointed directors continued to manage the company).

H&P-IDC's theory of jurisdiction fails for yet another reason – it cannot prove that the taking of H&P-V's oil rigs completely destroyed the value of the H&P-V shares.  *See Helmerich IV*, 743 F. App'x at 454.  To satisfy this standard, a plaintiff must establish that the entire enterprise was taken.  Indeed, "a state's expropriation of a corporation's property that does not result in the expropriation of the entire enterprise is not an indirect expropriation of foreign shareholders' direct rights under customary international law, even if it reduces the value of the shares to zero."  *Exxon Mobil*, 534 F. Supp. 3d at 27 (quoting the U.S. government's supplemental amicus brief in *Helmerich IV*).  The record developed in discovery proves that after its rigs were taken H&P-V still had very significant assets and retained significant value.  H&P-IDC's federal tax disclosures state that its shareholder equity in H&P-V was worth over $105 million and that H&P-V continued to own assets in that amount.  Meehan Decl., Ex. 10 at 3.  Given Plaintiff's assertion that H&P-V's oil rigs had a book value of approximately $158 million

before they were taken, H&P-V retained 40% of its assets after the rigs were taken. Meehan Decl., Ex. 10, Ex. 1 at No. 18. Those assets included over $31 million in cash, nearly $12 million in receivables and over $6.5 million in recorded loan assets. Meehan Decl., Ex. 10, Ex. 7 at 55, Ex. 3 at No. 11. H&P-V also recorded income of $22.5 million on insurance claims based on the taking of its oil rigs. Meehan Decl., Ex. 12 at 2, Ex. 11 at 2, Ex. 8 at 23, 27-29. H&P-V's own documents demonstrate that it remained solvent after the taking of its oil rigs and was not in danger of being placed into bankruptcy. Meehan Decl., Ex. 13. Furthermore, not only did the H&P-V shares retain significant value after the expropriation of H&P-V's oil rigs, H&P-IDC has benefited materially from its continued ownership of the H&P-V shares through dividends and other payments and distributions. Meehan Decl., Ex. 3 at No. 11, Ex. 1 at No. 5. It is therefore clear that "the beneficial and productive value" of the H&P-V shares were not "completely destroy[ed]." *Helmerich IV,* 743 F. App'x at 455. Rather, the H&P-V shares have remained valuable and H&P-IDC has used its shareholder rights to extract significant value from those shares.

Moreover, H&P-V's continued existence is itself a significant, if not dispositive, factor that weighs against a finding that H&P-IDC's direct ownership rights in H&P-V were taken. *See Exxon Mobil*, 534 F. Supp. 3d at 28 (holding that shareholder could not demonstrate that the entire enterprise was taken where the corporation continued to observe corporate formalities and comply with corporate reporting requirements); *see also Case Concerning the Barcelona Traction, Light and Power Co., Ltd.,* 1970 I.C.J. 3, ¶¶ 44, 66-67 (Feb. 5) ("*Barcelona Traction*"). H&P-V does not just exist as a legal entity on paper. H&P-V has officers, directors and other employees. Meehan Decl., Ex. 2 Nos. 1, 8, Ex. 4 at No.18. It maintains offices and residential housing in Venezuela. Meehan Decl., Ex. 15, Ex. 16. H&P-V has entered into lease agreements

in its own name.  Meehan Decl., Ex. 15, Ex. 16.  It has pursued a variety of legal actions and

settlements.  Meehan Decl., Ex. 8 at 23, Ex. 2 at No. 1.  The extensiveness of H&P-V's activities

is reflected in the enormous volume of documents in Plaintiff's production that H&P-V

generated after the taking of its oil rigs.

   2. <u>H&P-IDC Has No Rights in H&P-V's Assets under Venezuelan Law</u>

  H&P-IDC's argument that it has a direct property right to "use" H&P-V's assets under

Venezuelan law is frivolous.  As the Republic itself explained in its reply brief in *Helmerich IV*,

no such right exists under Venezuelan law.[8]  Venezuelan law explicitly deems a corporation a

"juridical person distinct from that of the stockholder."  Meehan Decl., Ex. 22, Código de

Comercio [Commercial Code] art. 201(3) (Venez.), *translated in* Thomson Reuters, Checkpoint:

RIA Worldwide Tax and Commercial Law ("<u>Venezuelan Commercial Code</u>").  Moreover,

Article 208 of the Venezuelan Commercial Code states that "property contributed by the partners

becomes the property of the company, unless it is stipulated to the contrary."  Meehan Decl., Ex.

23, Venez. Commercial Code art. 208.  Thus, shareholders are protected from "liabil[ity]"

beyond "the amount of their shares," Venez. Commercial Code art. 201(3), but they must also

forego the "right to enforce any claim in favor of their corporation," *Hausman* v. *Buckely*, 299

F.2d 696, 698 n.5 (2d Cir. 1962) (discussing Venezuelan law).

  Venezuelan law is thus in accord with international law, U.S. law and the law of virtually

every modern legal system that a shareholder has no rights in the assets of the company.  *See,*

*e.g., Dole Food Co.* v. *Patrickson*, 538 U.S. 468, 475 (2003) ("An individual shareholder, by

---

[8] The PDVSA Defendants rely on the Republic's interpretations of Venezuelan law set forth in
its reply brief in the D.C. Circuit.  *See* Venezuela's Reply Brief, *Helmerich & Payne Int'l
Drilling Co. v. Bolivarian Republic of Venez.,*No. 13-7169 [Doc. 1719380] (Feb. 23, 2018), at
27-38.  Those interpretations of Venezuelan law are entitled to "respectful consideration."  *See
Animal Sci. Prods. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865, 1869 (2018).

virtue of his ownership of shares, does not own the corporation's assets"); *Barcelona Traction*, 1970 I.C.J. at ¶ 41 ("the shareholder has no right to the corporate assets"); *Ahmadou Sadio Diallo (Guinea v. Dem. Rep. Congo)*, 2007 I.C.J. 582, ¶ 61 (May 24) ("Conferring independent corporate personality on a company implies granting it rights over its own property, rights which it alone is capable of protecting.").

As the D.C. Circuit observed, H&P-IDC does not dispute that the drilling rigs belonged to H&P-V under Article 208.  *Helmerich IV*, 743 F. App'x at 455-56; *see* Meehan Decl., Ex. 23. Nevertheless, H&P-IDC contends that, as sole owner of H&P-V, it has the right under Venezuelan law to control the use of its subsidiary's assets directly.  If this extraordinary right existed, it would effectively collapse the distinction between corporation and shareholder and dispense with the basic bargain of limited liability.  One would expect such an extraordinary right to be clearly and unambiguously articulated – particularly since such a right would fundamentally conflict with the provisions of the Venezuelan Commercial Code.  Plaintiff identifies no such Venezuelan legal authority.  None exists.

H&P-IDC relied on Article 280 of the Venezuelan Commercial Code, which states that, "[w]hen the bylaws do not provide otherwise," a meeting of a company's shareholders must have a quorum of three-fourths of the shareholders, and a favorable vote of at least half the shareholders, to accomplish various corporate acts, including the "early dissolution of the company," a "change of purpose of the corporation," and the "sale of firm assets."  *See* Meehan Decl., Ex. 24.  As an initial matter, Article 280 does not apply because H&P-V's bylaws contain distinct provisions that govern the calling of shareholders' meetings, the establishment of a quorum, the exercise of voting rights and the corporate acts that are subject to a shareholder vote. Meehan Decl., Ex. 6 at arts. 5-7.  While H&P-V bylaws state that the shareholders shall have the

power to call a meeting to vote "on the sale of all or substantial part of the company's corporate assets," such a power is unremarkable and consistent with ordinary corporate law principle that shareholders have the right to vote on material transactions.  *See, e.g.,* Fletcher Cyclopedia of the Law of Corporations § 2949.21 (2013 rev. ed.).  In fact, Article 280 of the Venezuelan Commercial Code relied on by Plaintiff does just that – it sets a default rule providing shareholders a right to *vote* on the *sale* of firm assets.  That shareholder voting right is a right in the shares – not in the company's assets – and those voting rights are in no sense equivalent to a direct right to *use* the company's assets.[9]

Neither Article 280 nor H&P-V's bylaws give H&P-IDC any right to directly control the use of the oil rigs or any other specific property owned by H&P-V.  Construing Article 280 of the Venezuelan Commercial Code as granting a shareholder such a direct right in specific property of the company would create an irreconcilable conflict with other provisions in the same statute, including Article 208, which provides that shareholders have no such direct rights in the company's property.  *Cf. Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.").  Furthermore, such a construction would conflict with H&P-V's bylaws, which explicitly state that *H&P-V* shall "own and use machine drilling rigs" and other property of the company.  Meehan Decl., Ex. 6 at art. 2. The notion that both the parent and subsidiary can hold the exact same right to directly control the use of a specific asset would also conflict with Article 201, which provides that the parent and subsidiary are separate entities with separate legal rights.

---

[9] As explained above, H&P-IDC has continued to exercise its shareholder rights to convene shareholder meetings and vote those shares and therefore those voting rights were not taken.  *See supra* at Section C; Section I.A.1.

H&P-IDC also pointed to language in *Regulations of the Decree With the Rank and Force of Law to Promote and Protect Investments*, Decree No. 1,867, art. 3 (July 11, 2002), Official Gazette No. 37,489 (July 22, 2002) (Venez.)) ("Decree 1,867"), which is the implementing regulation for Venezuela's investment law, *Decree Having the Rank and Force of Law on Investment Promotion and Protection*, Decree No. 356 (Oct. 3, 1999), Official Gazette No. 5,390 (Oct. 22, 1999) (Venez.) ("Decree 356").  *See* Meehan Decl., Ex. 25, 26.  Decree 1,867 states that  "[f]or purposes of … Article 3 of [Decree 356], it is understood that an investment is the property of foreign investors when their ownership interest in the company receiving the investment is one hundred percent (100%) of the capital stock, equity, or assets of the company."  Decree 1,867, art. 3.  Here, H&P-IDC made "an investment" of "capital" in the amount of Bs. F. 49,309,871.60 in exchange for an "ownership interest" in "one hundred percent (100%) of the capital stock" of H&P-V.  *See id.*; Meehan Decl., Ex. 6 at art. 3; Compl. ¶ 102.  Thus, both Decree 356 and its implementing regulation make clear that H&P-IDC's property is the capital shares of H&P-V.  Those laws give H&P-IDC no rights in H&P-V's assets.  Neither Decree 356 nor Decree 1,867 derogate from the universal corporate law principle enshrined in the Venezuelan Commercial Code that shareholders have no direct rights in the company's assets.

Furthermore, Decree 356 and its implementing regulation requires foreign investors to vindicate their rights in either Venezuelan courts or an appropriate arbitral forum.  Decree 356, art. 23.  And it is well-settled that, "when [foreign law] creates a right, that foreign law can determine the remedy."  *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015) (Sentelle, J.) (sitting by designation); *see also Tennessee Coal, Iron & R. Co. v. George*, 233 U.S. 354, 359 (1914) ("There are many cases where right and remedy are so united that the

right cannot be enforced except in the manner and before the tribunal designated by the act. For the rule is well settled that 'where the provision for the liability is coupled with a provision for a special remedy, that remedy, and that alone, must be employed.'").

* * * * *

For the reasons discussed above, Plaintiff cannot demonstrate that any of its own rights in property were taken in violation of international law as required under the FSIA's expropriation exception.  This case must be dismissed with prejudice for lack of subject matter jurisdiction.

**B.      Plaintiff Failed to Establish the Requisite Jurisdictional Nexus with the United States as Required under the FSIA's Expropriation Exception**

In addition to establishing a taking of its own property in violation of international law, Plaintiff must also establish a jurisdictional nexus with the United States by showing that the expropriated "property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States."  28 U.S.C. § 1605(a)(3).  Here, Plaintiff cannot satisfy either element of this jurisdictional nexus requirement.

**1.      Plaintiff Failed to Establish that PDVSA Owns or Operates the Expropriated Property or Any Property Exchanged for Such Property**

H&P-IDC primarily argues that "its ownership interest in its subsidiary, H&P-V" constitutes that "property" that was taken.  *Helmerich IV*, 743 F. App'x at 453.  As explained above, H&P-IDC's ownership interests in H&P-V were not taken at all.  Rather, the evidence unambiguously demonstrates that Plaintiff continues to own and control the shares of H&P-V and the operations of H&P-V through the exercise of its shareholder rights.  *See supra* at Section C; Section I.A.1.  H&P-IDC has continued to exercise its shareholders rights to appoint H&P-V's officers and directors, to hold shareholder meetings, to vote the shares, to appoint proxies and to approve dividends and other corporate actions.  *See supra* at Section C; Section I.A.1.

H&P-V has continued to hold valuable assets.  It has its own employees and maintains offices in Venezuela.  It continues to take legal actions in its own name.  There is not a shred of evidence that the PDVSA Defendants have any control or influence over the affairs of the company.  Thus, H&P-IDC cannot show that its ownership interest in H&P-V "is owned or operated" by the PDVSA Defendants as required to establish jurisdiction under Section 1605(a)(3).

Even assuming *arguendo* that Plaintiff could establish its allegation that the taking of H&P-V's oil rigs "completely destroy[ed] the beneficial and productive value of [H&P-IDC's] ownership of [H&P-V], and [left] H&P-IDC with shares that have been rendered useless," *Helmerich IV*, 743 F. App'x at 455, the D.C. Circuit has repeatedly held that the "owned or operated" requirement of Section 1605(a)(3)  does not apply where the right in property was extinguished or destroyed.  *See Ivanenko v. Yanukovich*, 995 F.3d 232, 237-38 (D.C. Cir. 2021); *Nemariam v. Fed. Democratic Republic of Ethiopia*, 491 F.3d 470, 481 (D.C. Cir. 2007).  Thus, even if H&P-IDC could establish that its interest in H&P-V was destroyed, its complaint must still be dismissed for lack of subject matter jurisdiction.

H&P-IDC also argued that its alleged direct right under Venezuela law to use H&P-V's assets was taken.  *Helmerich IV*, 743 F. App'x at 453.  Again, as explained above, Venezuelan law is clear that H&P-IDC does not have any direct rights in H&P-V's assets.  *See supra* at Section I.A.2.  Because H&P-IDC had no rights in H&P-V's assets to be taken, those non-existent rights in H&P-V's property are not "owned or operated" by the PDVSA Defendants as required to establish jurisdiction under the FSIA's commercial activity exception, 28 U.S.C. § 1605(a)(3) .

Finally, the PDVSA Defendants note that, at the outset of this case, H&P-IDC and former co-plaintiff H&P-V argued that the PDVSA Defendants "owned or operated" H&P-V's oil rigs.

That argument is no longer viable or relevant in view of the D.C. Circuit's decision in *Helmerich IV* dismissing H&P-V's claims based on the taking of its rigs and holding that H&P-IDC could not assert claim for the taking of H&P-V's rigs.  Simply put, the oil rigs are not property taken from H&P-IDC and thus it is jurisdictionally irrelevant who "owned or operated" those rigs.[10]

2.    Plaintiff Failed to Establish that the PDVSA Defendants<br>Are Engaged in Commercial Activity in the United States

Plaintiff's original theory in this case was based on the taking of H&P-V's oil rigs.  Because those oil rigs were in the custody of Servicios Petroleros, Plaintiff argued that Servicios Petroleros "owned and operated" the expropriated oil rigs and engaged in commercial activities in the United States as required to establish the jurisdictional nexus requirement of the FSIA's expropriation exception.  Dkt. No. 114.  However, as explained above, H&P-IDC cannot assert an expropriation claim based on the taking of H&P-V's oil rigs in light of *Helmerich IV* and therefore the ownership and operation of H&P-V's oil rigs is irrelevant to the jurisdictional analysis.  H&P-IDC has shifted its theory of the case to assert an alleged taking of its ownership interest in the H&P-V shares.  But Servicios Petroleros does not own or control the H&P-V shares.  Accordingly, Servicios Petroleros' conduct is irrelevant to the jurisdictional analysis.

Even if Plaintiff continues to argue that Servicios Petroleros' conduct remains relevant to this case despite the holding of *Helmerich IV*, Servicios Petroleros is separate from the PDVSA Defendants and is not a party to this case.  Servicios Petroleros' conduct is not attributable to the PDVSA Defendants.  *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 627 (1983).  Furthermore, Servicios Petroleros does not engage in commercial

---

[10] Nevertheless, the evidence shows that Servicios Petroleros took possession of and operated the oil rigs.  *See* Dkt. No. 22-4, ¶¶ 5-7.  Servicios Petroleros is a second-tier subsidiary of PDVSA.  *Id.*  It does not qualify as an agency or instrumentality of the Republic.  *See Dole Food,* 538 U.S. at 477.  And Servicios Petroleros is not a party to this case.

activity in the United States.  Dkt. No. 22-4 ¶ 8.  In May 2016, this Court stated that there was "scant" evidence that Servicios Petroleros engaged in any commercial activity aside from a document that Plaintiff supposedly obtained from a third-party database (the "Bowker Exhibit") that purports to show that Servicios Petroleros was the consignee of 20 shipments originating in the United States.  Dkt. No. 114 at 18-19 (discussing Dkt. No. 109-3).  However, as the PDVSA Defendants later explained in supplement interrogatory responses, the Bowker Exhibit is not credible on its face as it contained numerous errors and inconsistencies, including the fact that the many of the alleged shipments identity ports of embarkation located outside of the United States.  Meehan Decl., Ex. 5 at No. 17.  The PDVSA Defendants further stated that Servicios Petroleros had no record of the bill of lading numbers referenced in the Bowker Exhibit and explained that those bill of lading numbers were not in a recognizable format.  *Id.*

In any event, discovery was never completed on this issue and cannot be resumed because it is undisputed that the PDVSA Defendants have no access to any information regarding Servicios Petroleros or any other operations in Venezuela.  Dkt. No. 149, Ex. A, Cardenas Decl. ¶¶ 3, 6-9.  This Court has thus recognized that "it is difficult to see how the case can move forward on this jurisdictional issue."  Dkt. No. 145 at 2.

Furthermore, the application of the FSIA's expropriation exception here would not comport with due process because, as explained below, Plaintiff's claim does not arise out of the PDVSA Defendants' contacts with the United States.  *See infra* Section II.  That would be true even assuming *arguendo* that Servicios Petroleros engaged in some commercial activity in the U.S. and assuming *arguendo* that such activity could be attributed to the PDVSA Defendants.

## II. <u>This Case Must Be Dismissed for Lack of Personal Jurisdiction</u>

The FSIA authorizes the exercise of personal jurisdiction over a foreign sovereign where one of the FSIA's exceptions to foreign sovereign immunity applies and service was made in

accordance with the FSIA. *See* 28 U.S.C. § 1330(b); *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C. Cir. 1994). As explained above, the FSIA's expropriation exception does not apply and, thus, for that reason alone the PDVSA Defendants must be dismissed for lack of personal jurisdiction under Federal Rule 12(b)(2). *See supra* Section I. Moreover, it is well-established principle of constitutional law that a "statute cannot grant personal jurisdiction where the Constitution forbids it." *Gilson v. Republic of Ireland*, 682 F.2d 1022, 1028 (D.C. Cir. 1982). Thus, even if statutory jurisdiction exists under Section 1330(b), a court must still determine whether the exercise of jurisdiction comports with the requirements of due process.

The Supreme Court has repeatedly held that foreign corporations are entitled to the protections of due process. *See, e.g., Daimler AG v. Bauman*, 571 U.S. 117 (2014); *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102 (1987); *Helicopteros Nacionales de Colombia, SA v. Hall*, 466 U.S. 408 (1984). The fact that the PDVSA Defendants are state-owned corporations is of no moment. While the D.C. Circuit has held that a "foreign state" – *i.e.,* the government itself – is not a "person" under the Due Process Clause, it has repeatedly made clear that state-owned corporations, such as the PDVSA Defendants, that qualify as "agencies or instrumentalities of a foreign state" under the FSIA are entitled to due process unless the state-owned corporation is proven to be the alter ego of the government itself. *See GSS Grp. Ltd. v. Nat'l Port Auth. of Liber. & Republic of Liberia*, 822 F.3d 598, 603 (D.C. Cir. 2016); *GSS Grp. Ltd v. Nat'l Port Auth.*, 680 F.3d 805, 813-15 (D.C. Cir. 2012); *see also UAB Skyroad Leasing v. OJSC Tajik Air*, No. 21-7015, 2022 U.S. App. LEXIS 16977, at *2 (D.C. Cir. June 17, 2022); *Gater Assets Ltd. v. Moldovagaz*, 2 F.4th 42, 65-66 (2d Cir. 2021); *First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 752 (5th Cir. 2012). Here, there are no

allegations, much less evidence, that the PDVSA Defendants are alter egos of the Republic.[11] Thus, the PDVSA Defendants are entitled to due process.

The exercise of personal jurisdiction over the PDVSA Defendants would not comport with due process. The PDVSA Defendants are Venezuelan corporations and are therefore not subject to the general personal jurisdiction of this Court. *See Daimler,* 571 U.S. at 122; *see also Livnat v. Palestinian Auth.*, 851 F.3d 45, 54-56 (D.C. Cir. 2017). Nor are the PDVSA Defendants subject to specific personal jurisdiction in this case. Due process requires that there be a nexus among the defendant, the cause of action, and the forum. *See Bristol-Myers Squibb v. Superior Court of California*, 528 U.S. 255, 264 (2017). Plaintiff's claim arises out the Venezuelan government's expropriation of the Venezuelan assets of Plaintiff's Venezuelan subsidiary, H&P-V. Plaintiff's claim does not arise out of or relate to any conduct by the PDVSA Defendants or the Republic in the United States. Thus, the exercise of specific personal jurisdiction would violate due process.

---

[11] While Plaintiff did raise an argument that PDVSA and the Republic are alter egos in opposing the Republic's renewed motion to dismiss, Dkt. No. 150 at 12, such an argument would require dismissal of the PDVSA Defendants for lack of jurisdiction under the FSIA's expropriation exception. It is well-established that the expropriation exception sets a more restrictive commercial nexus standard for foreign states than it does for agencies and instrumentalities of a foreign state. *See De Csepel*, 859 F.3d at 1108. This Court has already held that Plaintiff failed to satisfy that more restrictive commercial nexus standard and dismissed the Republic. *See Helmerich V*, 2023 U.S. Dist. LEXIS 15576, at *3-4. If the Court were to treat the PDVSA Defendants as one-and-the-same as the Republic, the PDVSA Defendants would need to be dismissed for the same reason. Indeed, where a plaintiff asserts that an agency or instrumentality of a foreign state is an alter ego of the state itself, the plaintiff must satisfy the more restrictive requirements applicable to foreign states under the FSIA. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 932 F.3d 126, 150 n.14 (3d Cir. 2019); *Af-Cap, Inc. v. Chevron Overseas (Congo), Ltd.*, 475 F.3d 1080, 1095 (9th Cir. 2007); *see also Transaero*, 30 F.3d at 151.

**III.**      **H&P's Claims Are Barred by the Act of State Doctrine**

The act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964).  The FSIA and the act of state doctrine provide separate bases for dismissal of Plaintiff's expropriation claim.  This is because "sovereign immunity . . . raises a jurisdictional defense, [while] the act of state doctrine provides foreign states with a substantive defense on the merits." *Republic of Austria v. Altmann*, 541 U.S. 677, 700-01 (2004) (The "FSIA in no way affects application of the act of state doctrine.").  One court described the difference between the two as follows:  "While the effect of sovereign immunity is to shield the person of the foreign sovereign and, by extension, his agents from jurisdiction, the act of state doctrine shields the foreign sovereign's internal laws from intrusive scrutiny." *Braka v. Bancomer, S.A.*, 589 F. Supp. 1465, 1470 (S.D.N.Y. 1984), *aff'd*, 762 F.2d 222 (2d Cir. 1985).

The act of state doctrine requires dismissal of any case where the "relief sought . . . would … require[] a court in the United States to *declare invalid the official act* of a foreign sovereign performed within its own territory." *W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp.*, 493 U.S. 400, 405 (1990) (emphasis added).  The D.C. Circuit has explained that "the courts of appeals have understood [the 'official action' requirement] as referring to conduct that is by nature distinctly sovereign, *i.e.*, conduct that cannot be undertaken by a private individual or entity." *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1073 (D.C. Cir. 2012).  And that court has held that "expropriation of property is the classic act of state." *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1166 (D.C. Cir. 2002).  Thus, the doctrine plainly applies here with full force.

Venezuela's National Assembly recommended the expropriation of H&P-V's oil drilling rigs and associated property for the "public benefit and good."  Compl. ¶ 67.  The expropriation is being accomplished pursuant to two separate Venezuelan official acts (the Venezuelan National Assembly's *Acuerdo* and the National Executive's Expropriation Decree) and two judicial proceedings.  The expropriation of H&P-V's assets in Venezuela is "distinctly sovereign" and public in nature, and is the "classic" governmental act triggering application of the act of state doctrine.

Plaintiff cannot rely on the so-called "Hickenlooper Amendment" to avoid dismissal.  Hickenlooper states, in relevant part, that:

> … [N]o court in the United States shall decline on the ground of the federal act of state doctrine to make a determination on the merits giving effect to the principles of international law in a case in which a claim of title or other rights to property is asserted by any party including a foreign state (or a party claiming through such state) based upon (or traced through) a confiscation or other taking after January 1, 1959, by an act of that state in violation of the principles of international law ….

22 U.S.C. § 2370(e)(2).  Hickenlooper does not apply here for several reasons.

First, Hickenlooper applies only where there is a violation of international law.  *See id.*; *see also Von Saher v. Norton Simon Museum of Art*, 897 F.3d 1141, 1154(9th Cir. 2018); *Comparelli v. Republica Bolivariana De Venezuela*, 891 F.3d 1311, 1320 (11th Cir. 2018); *Yang Rong v. Liaoning Provincial Gov't*, 362 F. Supp. 2d 83, 99 (D.D.C. 2005), *aff'd on other grounds*, 452 F.3d 883 (D.C. Cir. 2006).  The D.C. Circuit has already held that the taking of H&P-V's property did not violate international law.  *Helmerich IV*, 743 F. App'x at 447-48.  And, as explained above, Plaintiff has failed to demonstrate a taking of its own property in violation of international law.  *See supra* Section I.A.  Accordingly, Hickenlooper does not apply here.  *See Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703, 706 (2021) ("[N]othing in the

[Hickenlooper] Amendment purported to alter any rule of international law, including the domestic takings rule.").

Second, Hickenlooper, by its plain terms, applies only "in a case in which a claim *of title or other rights to property*" is asserted.  22 U.S.C. § 2370(e)(2) (emphasis added).  Indeed, Hickenlooper was not enacted "to assure a remedy in American courts for every kind of monetary loss resulting from actions, even unjust actions, of foreign governments. The law is restricted, manifestly, to … a claim of title or other right to specific property."  *French v. Banco Nacional de Cuba*, 23 N.Y.2d 46, 57-58 (N.Y. 1968).  Here, Plaintiff is not asserting any claims to establish title or other rights in property.  It is asserting a claim for damages.  Such a claim for monetary damages is outside the scope of Hickenlooper.  *See id.* at 57-58, 61.

Third, Hickenlooper applies only where the allegedly expropriated property is located within the United States.  *See, e.g.*, *Compania de Gas de Nuevo Laredo, S.A. v. Entex, Inc.*, 686 F.2d 322, 327 (5th Cir. 1982) ("[W]e hold that the Hickenlooper amendment is inapplicable because neither the nationalized property nor its proceeds are located in the United States."); *Empresa Cubana Exportadora de Azucar y Sus Derivados v. Lamborn & Co.*, 652 F.2d 231, 237 (2d Cir. 1981) (Hickenlooper applies "only to cases in which the expropriated property has found its way back into the United States" and "[s]ince in this case the seized assets are still in Cuba, the Hickenlooper Amendment does not apply"); *Yang Rong*, 362 F. Supp. 2d at 99 (Hickenlooper did not apply "because property at issue[, shares in Hong Kong company allegedly expropriated by China,] is not located in the United States."); *see also* RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES (1987) § 444 cmt. e ("[F]or the … Amendment to apply, the plaintiff must allege and prove that the property that is the subject of the claim is in the United States . . . .")).  Here, this Court has already held that the property at

issue in this case is not located in the United States.  *Helmerich V*, 2023 U.S. Dist. LEXIS 15576, at *3.  Thus, Hickenlooper does not apply for this reason as well.

## **CONCLUSION**

For the reasons stated above, the last remaining claim in this case, H&P-IDC's expropriation claim against the PDVSA Defendants, should be dismissed for the same reason all the other claims in this case have been dismissed – lack of subject matter jurisdiction under the FSIA.  In addition, that claim must be dismissed for lack of personal jurisdiction and failure to state a claim by operation of the act of state doctrine.


Dated:          Washington, D.C.
                October 10, 2023

Respectfully submitted,

CURTIS, MALLET-PREVOST,
  COLT & MOSLE LLP

*/s/ Joseph D. Pizzurro*
Joseph D. Pizzurro (D.C. Bar No. 468922)
Kevin A. Meehan (D.C. Bar No. 1613059)
Juan O. Perla (D.C. Bar No. 1660389)
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.: (202) 452-7373
Fax: (202) 452-7333
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

*Attorneys for Defendants Petróleos de Venezuela,
S.A. and PDVSA Petróleo, S.A.*